Docket No. 99924.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

RITA LANGENHORST, Special Adm'r of the Estate of Gerald Langenhorst, Deceased, Appellee, v. NORFOLK SOUTHERN RAILWAY COMPANY *et al*., Appellants.

*Opinion filed March 2, 2006.*

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Justices Freeman, McMorrow and Fitzgerald concurred in the judgment and opinion.

Justice Garman, joined by Chief Justice Thomas and Justice Karmeier, dissented.

## OPINION

Plaintiff, Rita Langenhorst, as special administrator of the estate of Gerald Langenhorst, deceased, brought a wrongful-death action in the circuit court of St. Clair County against defendants, Norfolk Southern Railway Company (Norfolk), Jimmy Ellis, Samuel Baggett, and Keith Egmon. Plaintiff sought damages for the death of Gerald Langenhorst, resulting from a train-motor vehicle accident occurring in Clinton County. Defendants moved to transfer the action to Clinton County under the doctrine of *forum non conveniens*.

The circuit court denied the motion and the appellate court initially entered an order denying defendants' petition for leave to

appeal. This court then entered a supervisory order directing the appellate court to vacate and reconsider its judgment in light of *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167 (2003), and *First American Bank v. Guerine*, 198 Ill. 2d 511 (2002). Upon reconsideration, the appellate court affirmed the circuit court's denial of defendants' motion to transfer. 354 Ill. App. 3d 1103.

We allowed defendants' petition for leave to appeal (177 Ill. 2d R. 315). We also allowed the Illinois Trial Lawyers Association leave to file a brief as *amicus curiae* in support of plaintiff. 155 Ill. 2d R. 345(a). We now affirm.

## I. BACKGROUND

On July 27, 2001, Gerald Langenhorst, a lifetime resident of Germantown, Clinton County, died from injuries he sustained when he was ejected from his pickup truck after being struck by a Norfolk train. The accident occurred at a railroad crossing on the Langenhorst farm, located in Clinton County near the St. Clair County line, a few miles west of Germantown, Clinton County. Norfolk is a foreign corporation domiciled in Virginia, whose Illinois registered agent for service is located in Belleville, St. Clair County. Defendant Samuel Baggett a resident of Patoka, Indiana, was employed by Norfolk as the conductor of the train at the time of the accident. Patoka is approximately 146 miles from Belleville and 129 miles from Carlyle, Clinton County. Defendant, Keith Egmon, a resident of Hazelton, Indiana, and a Norfolk employee, was the train's engineer at the time of the accident. Hazelton is approximately 10 miles north of Patoka. Defendant Jimmy Ellis a resident of Decatur, Macon County, was Norfolk's division engineer, responsible for maintenance and safety of the railroad crossing. Decatur is approximately 117 miles from Belleville and 100 miles from Carlyle.

Gerald was transported by New Baden, Clinton County, ambulance to St. Joseph's Hospital in Breese, Clinton County, approximately five miles north of Germantown. The doctors who treated Gerald at St. Joseph's Hospital are not residents of Clinton County. Dr. Keith Thomas resides in Madison County, and Dr. David Sorge resides in St. Clair County.

According to defendant, fire departments from neighboring Germantown and Albers in Clinton County responded to the accident.

Defendant also claims that ambulances from Albers and Breese were present at the scene of the accident, but it does not appear from the record that those ambulance services transported anyone from the accident scene. Gerald's wrecked vehicle was transported to Robke Auto Body in Germantown following the accident.

Clinton County Sheriff's Deputy C. Becherer investigated and prepared an accident report. The record indicates he took no photographs or videotape of the accident scene.

St. Joseph's Hospital was not equipped to treat Gerald's neurological injuries and he was transported by Arch Air Medical Service of St. Louis, Missouri, to St. Louis University Hospital in St. Louis, Missouri. St. Louis is approximately 40 miles west of Breese and 15 miles west of Belleville. Gerald died shortly after arriving at St. Louis University Hospital.

Dr. Raj Nanduri, a pathologist with the St. Louis city medical examiner in St. Louis, Missouri, performed an autopsy on Gerald's body and reported his cause of death as thoracic blunt trauma injuries suffered in the accident.

Plaintiff hired Mark Heffernan, a resident of St. Clair County, to investigate the accident. On August 18 and September 16, 2001, Heffernan took extensive photographs of the railroad crossing where the accident occurred. Hefferman also videotaped the railroad crossing and prepared diagrams of the scene. All items relating to Hefferman's investigation are located in St. Clair County.

Don Richardson of the Illinois Commerce Commission Transportation Division/Rail Safety Section in Springfield, Illinois, belatedly learned of this fatal accident, and on September 13, 2001, he conducted an inspection of the railroad crossing. Richardson observed a cornfield within 28 feet of the railroad, and weeds and brush appearing to have been recently cut to 280 feet of the crossing. Richardson noted additional cutting was needed to bring the crossing into compliance with the Illinois Administrative Code.

Richardson also found the crossbuck in the northwest quadrant of the crossing had lost most of its reflective material on the back, needed to be replaced, and was not in compliance with the Illinois Administrative Code. Richardson's written report indicated Norfolk was contacted about its failure to report the accident and the need to

replace the crossbuck and to cut additional brush on the railroad right-of-way.

Richardson made his written report to Michael Stead, Rail Safety Program Administrator in Springfield, on September 24, 2001. On that same date, Stead notified defendant Ellis, Norfolk's division engineer, of the inspection and informed him that the crossing was not in compliance with the Administrative Code. Stead informed Ellis that the crossbuck needed to be replaced "as soon as possible" and that weeds and brush needed to be cut to bring the crossing into compliance with the Administrative Code, "which requires the railroad right of way to be kept reasonably clear of brush, shrubbery, trees, weeds, crops, etc. for a distance of 500 feet each way from the crossing." 92 Adm. Code §§1535.300, 1535.205 (2003). Stead advised Ellis to notify his office in writing when the corrective action had been taken to bring the crossing into compliance. The letter further advised Ellis to contact its railroad safety specialist, Bob Berry, with any questions.

Gerald's widow, Rita Langenhorst, a resident of Germantown, Clinton County, as special administrator of Gerald's estate, hired an attorney from Belleville, St. Clair County, to represent her in this action. On October 22, 2001, Rita's attorney filed this wrongful-death action on her behalf in Belleville, St. Clair County. Belleville is located approximately 26 miles west of Germantown. Following service on Norfolk's Belleville, St. Clair County, Illinois, registered agent for service, Norfolk, on behalf of itself and its employees, hired attorneys in Belleville, St. Clair County, to defend this action.

On January 25, 2002, defendants filed a motion to transfer this action to Clinton County based on the doctrine of *forum non conveniens*. The Clinton County courthouse is located in Carlyle, approximately 12 miles east of Germantown, and 36 miles east of Belleville. The individual defendants each filed identical affidavits stating, "It would not be inconvenient for me to appear in Clinton County, Illinois for the trial of this case." The affidavits did not indicate these defendants would be inconvenienced by appearing at a trial in St. Clair County. Defendants also supported their motion to transfer with plaintiff's answers to interrogatories that list several neighbors who were at the scene of the accident.

On June 12, 2002, the circuit court of St. Clair County held a hearing on defendants' motion to transfer. Defense counsel argued that all of the *forum non conveniens* factors favored transfer to Clinton County. Citing to a law review article, defendants argued that only one factor seems to matter–the place of the occurrence–and that this case has no practical connection to St. Clair County because the decedent and his wife were from Clinton County, the accident occurred in Clinton County, and the witnesses listed in defendants' discovery are from Clinton County. Defense counsel also cited court statistics, both in numbers of cases and in timely docket dispositions as factors favoring transfer to Clinton County. During the hearing, the circuit court judge commented on the St. Clair County court's docket congestion:

> "[T]he idea that anybody thinking they can get to trial and have a trial quicker in another county than St. Clair County just isn't true *** hardly anybody goes to trial to verdict. I think I've had three verdicts all year *** you can get to trial any time you want to. You want to try a case in St. Clair County, I'm telling you I'll try it. It doesn't matter whose docket, you just can, and you can get to trial in St. Clair County as quickly as you can in any other county."

Plaintiff's counsel argued that the scene of the accident has changed since the date of the accident. The only legitimate accident site evidence that would have existed at the time of the occurrence is located in his office in St. Clair County, evidence generated by plaintiff's investigator, who resides in St. Clair County. Plaintiff's counsel also argued that the railroad's registered agent is located in St. Clair County, that all the lawyers in the case are located in St. Clair County, that all medical evidence is located in both Clinton County and St. Louis, Missouri, and that the St. Louis witnesses are more conveniently located to St. Clair County. Plaintiff's counsel stated it would be more convenient to try the case in St. Clair County. Plaintiff's counsel also pointed out that the witnesses listed by defendants do not have anything significant to testify to and, regardless, a nine-mile distance is not going to inconvenience them. According to plaintiff's counsel,

> "[Defendants] file[d] affidavits from two of their employees who are residents of Indiana, suggesting to the

court with their affidavits is [*sic*] that Clinton County is not an inconvenience to them; well, guess what, that's not the test. The test is whether St. Clair County is an inconvenience to them. Presumably, they were unwilling to sign an affidavit which suggested that a trip from Indiana to Belleville versus a trip from Indiana to Carlyle would in some fashion be more inconvenient."

Plaintiff's counsel argued that defendants want the case transferred to Clinton County because they thought the verdict would be smaller there, and acknowledged wanting the case to remain in St. Clair County because he believed the verdict would be larger there. According to plaintiff's counsel, defendant has not shown that St. Clair County is inconvenient.

Defense counsel countered there was not one factor connecting the case to St. Clair County. He contended the locations of Gerald's St. Louis doctors and Norfolk's registered agent were insignificant factors.

Following arguments, the circuit court judge stated that the factors did not strongly favor transfer and denied defendants' motion to transfer based on *forum non conveniens*. On June 12, 2002, the circuit court of St. Clair County entered a written order denying defendants' motion to transfer based on the doctrine of *forum non conveniens*.

On August 21, 2002, the appellate court denied defendants' petition to appeal pursuant to Supreme Court Rule 306(a)(2) (166 Ill. 2d R. 306(a)(2)). On October 7, 2003, this court denied defendants' petition for leave to appeal and issued a supervisory order directing the appellate court to vacate its judgment and to reconsider its judgment in light of *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167 (2003), and *First American Bank v. Guerine*, 198 Ill. 2d 511 (2002). See *Langenhorst v. Norfolk Southern Ry. Co.*, 205 Ill. 2d 586 (2003) (table).

Upon reconsideration, the appellate court affirmed the circuit court's denial of defendants' motion to transfer. 354 Ill. App. 3d 1103. After reviewing *Guerine* and *Dawdy*, the appellate court examined the public and private interest factors and held that the circuit court of St. Clair County did not abuse its discretion in denying defendants' *forum non conveniens* motion. 354 Ill. App. 3d at

˘6˘

1122. The appellate court reasoned that a trial in the St. Clair County courthouse, blocks away from the parties' attorneys' offices, would tend to make trial easier, more expeditious, and less expensive for the clients. 354 Ill. App. 3d at 1116-17. The appellate court also reasoned that even though Norfolk could be considered a resident of St. Clair County by virtue of doing business in that county, transfer to Clinton County would not find the litigation in the resident county of any of the other defendants. 354 Ill. App. 3d at 1117.

The appellate court also examined witness convenience and determined that any inconvenience the plaintiff's chosen forum presents is minuscule. 354 Ill. App. 3d at 1117-18. It noted that the parties expected the plaintiff's investigator to give extensive testimony about his investigation of the accident scene immediately after the crash. 354 Ill. App. 3d at 1119. Due to changes in the railroad crossing, the appellate court concluded a jury view of the crossing would be inappropriate, and even if a jury view were appropriate, the accident occurred so close to the St. Clair County border that travel to the accident scene would offer little inconvenience or expense. 354 Ill. App. 3d at 1119-20. Further, the appellate court reasoned, none of the doctors reside in Clinton County. 354 Ill. App. 3d at 1120.

The appellate court determined that there was a 1% difference in disposing of major civil cases between St. Clair and Clinton Counties, and that it did not raise a concern over St. Clair County court congestion. 354 Ill. App. 3d at 1121. It was noted that the Norfolk line passing through the Langenhorst farm also bisects all of St. Clair County with crossings similar to the accident site, and the appellate court concluded that the local public interest was not limited to Clinton County residents. 354 Ill. App. 3d at 1122. Accordingly, the appellate court determined that it would not burden St. Clair County residents to serve on a jury that will decide the issues raised by this railroad accident case. 354 Ill. App. 3d at 1122. Thus, the appellate court held that the circuit court of St. Clair County did not abuse its discretion in deciding that the convenience factors do not strongly favor a transfer to Clinton County. 354 Ill. App. 3d at 1122.

We allowed defendants' petition for leave to appeal (177 Ill. 2d R. 315). We allowed the Illinois Trial Lawyers Association leave to file a brief as *amicus curiae* in support of plaintiff. 155 Ill. 2d R. 345(a).

## II. ANALYSIS

The venue statute, section 2–101 of the Code of Civil Procedure, provides:

> "[E]very action must be commenced (1) *in the county of residence of any defendant* who is joined in good faith and with probable cause for the purpose of obtaining a judgment against him or her and not solely for the purpose of fixing venue in that county, or (2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose." (Emphasis added.) 735 ILCS 5/2–101 (West 2000).

This court has recognized that "[t]he Illinois venue statute is designed to insure that the action will be brought either in a location convenient to the defendant, by providing for venue in the county of residence, or convenient to potential witnesses by allowing for venue where the cause of action arose." *Baltimore & Ohio R.R. Co. v. Mosele*, 67 Ill. 2d 321, 328 (1977), citing E. Sunderland, *Observations on the Illinois Civil Practice Act*, 28 Ill. L. Rev. 861 (1934). Despite conceding that St. Clair County is a proper venue, defendants assert that the doctrine of *forum non conveniens* requires transfer because St. Clair County has "no practical connection" to the parties and the location of the accident.

A *forum non conveniens* motion "causes a court to look beyond the criterion of venue when it considers the relative convenience of a forum." *Bland v. Norfolk & Western Ry. Co.*, 116 Ill. 2d 217, 226 (1987). The fact that a defendant conducts business within the county is not the only factor the court should consider in its analysis. *Vinson v. Allstate*, 144 Ill. 2d 306, 311 (1991).

*Forum non conveniens* is an equitable doctrine founded in considerations of fundamental fairness and the sensible and effective administration of justice. *Vinson*, 144 Ill. 2d at 310. This doctrine allows a trial court to decline jurisdiction when trial in another forum "would better serve the ends of justice." *Vinson*, 144 Ill. 2d at 310.

A trial court is afforded considerable discretion in ruling on a *forum non conveniens* motion. *Peile v. Skelgas, Inc.*, 163 Ill. 2d at 336; *Dawdy*, 207 Ill. 2d at 176 ("[t]he determination of a *forum non conveniens* motion lies within the sound discretion of the trial court"). We will reverse the circuit court's decision only if defendants have shown that the circuit court abused its discretion in balancing the relevant factors. *Dawdy*, 207 Ill. 2d at 176-77. A circuit court abuses its discretion in balancing the relevant factors only where no reasonable person would take the view adopted by the circuit court. *Dawdy*, 207 Ill. 2d at 177.

This court has repeatedly noted that the *forum non conveniens* doctrine gives courts discretionary power that should be exercised *only in exceptional circumstances* when the interests of justice require a trial in a more convenient forum. *Guerine*, 198 Ill. 2d at 520; *Peile*, 163 Ill. 2d at 335-36; *Torres v. Walsh*, 98 Ill. 2d 338, 346 (1983), citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839 (1947). See also *Dawdy*, 207 Ill. 2d at 176 (" '[t]he test *** is whether the relevant factors, viewed in their totality, *strongly* favor transfer to the forum suggested by defendant' " (emphasis added)), quoting *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 108 (1990). "The plaintiff has a substantial interest in choosing the forum where his rights will be vindicated, and the plaintiff's forum choice should rarely be disturbed unless the other factors strongly favor transfer." *Guerine*, 198 Ill. 2d at 517, citing *Griffith*, 136 Ill. 2d at 106; *Jones v. Searle Laboratories*, 93 Ill. 2d 366, 372-73 (1982); *Gulf Oil*, 330 U.S. at 508-09, 91 L. Ed. at 1062-63, 67 S. Ct. at 843; Restatement (Second) of Conflict of Laws §84, Comment *c* (1971) ("since it is for the plaintiff to choose the place of suit, his choice of a forum should not be disturbed except for weighty reasons"). However, the plaintiff's interest in choosing the forum receives "somewhat less deference when neither the plaintiff's residence nor the site of the accident or injury is located in the chosen forum." *Guerine*, 198 Ill. 2d at 517.

" 'In most instances, the plaintiff's initial choice of forum will prevail, provided venue is proper *and the inconvenience factors attached to such forum do not greatly outweigh the plaintiff's substantial right to try the case in the chosen forum*.' " (Emphasis added.) *Guerine*, 198 Ill. 2d at 520, quoting *Peile*, 163 Ill. 2d at 335-36. Although this is a difficult standard for defendants to meet, "it

does not foreclose *legitimate* transfers when the balance of factors *strongly* favors litigation in another forum." (Emphases added.) *Guerine*, 198 Ill. 2d at 521.

In deciding a *forum non conveniens* motion, a court must consider all of the relevant factors, without emphasizing any one factor. *Dawdy*, 207 Ill. 2d at 175-76 (collecting cases). Each *forum non conveniens* case must be considered as unique on its facts. *Satkowiak v. Chesapeake & Ohio Ry. Co.*, 106 Ill. 2d 224, 228 (1985); see *Moore v. Chicago & North Western Transportation Co.*, 99 Ill. 2d 73, 83 (1983) ("all factors essential to the trial of a particular case must be balanced in determining whether to dismiss an action on *forum non conveniens* grounds"); *Darnell v. Ralph Korte Equipment Co.*, 144 Ill. App. 3d 564, 566 (1986).

In *Guerine*, 198 Ill. 2d 511, we restated the private and public interest factors to be considered in applying the doctrine of *forum non conveniens*. "[P]rivate interest factors include (1) the convenience of the parties; (2) the relative ease of access to sources of testimonial, documentary, and real evidence; and (3) all other practical problems that make trial of a case easy, expeditious, and inexpensive ***." *Guerine*, 198 Ill. 2d at 516. Public interest factors include (1) the interest in deciding controversies locally; (2) the unfairness of imposing trial expense and the burden of jury duty on residents of a forum that has little connection to the litigation; and (3) the administrative difficulties presented by adding litigation to already congested court dockets. *Guerine*, 198 Ill. 2d at 516-17. These factors are relevant considerations for both interstate and intrastate *forum non conveniens* analysis. *Guerine*, 198 Ill. 2d at 517.

The burden is on the defendant to show that relevant private and public interest factors "strongly favor" the defendant's choice of forum to warrant disturbing plaintiff's choice. *Griffith*, 136 Ill. 2d at 107. The private interest factors are not weighed against the public interest factors; rather, the trial court must evaluate the total circumstances of the case in determining whether the defendant has proven that the balance of factors strongly favors transfer. *Guerine*, 198 Ill. 2d at 518. The defendant must show that the plaintiff's chosen forum is inconvenient to the defendant and that another forum is more convenient to all parties. *Guerine*, 198 Ill. 2d at 518. However, the defendant cannot assert that the plaintiff's chosen forum is

inconvenient to the plaintiff. *Guerine*, 198 Ill. 2d at 518. Unless the balance of factors strongly favor a defendant's choice of forum, the plaintiff's choice of forum should rarely be disturbed. *Gulf Oil*, 330 U.S. at 507-08, 91 L. Ed. at 1062, 67 S. Ct. at 842-43.

In *Guerine*, a Kane County resident was killed in an accident in De Kalb County. A lawsuit was filed in Cook County. One of the defendants was a Cook County resident, and the other defendant resided in Indiana, but would have to drive through Cook County to trial in either Kane or De Kalb County. The potential witnesses were scattered among several counties in the same area of the state, including Kane and De Kalb Counties. Several witnesses filed affidavits stating that they would be willing to travel to Cook County for trial. There was nothing in the record to indicate that a jury view of the accident site would be necessary.

We evaluated the continued vitality of the intrastate *forum non conveniens* doctrine in *Guerine* and reaffirmed the doctrine as Illinois law. *Guerine*, 198 Ill. 2d at 514. In determining that the trial court abused its discretion in granting the defendants' motion to transfer venue from Cook County to De Kalb County, we noted that both Cook County and De Kalb County had significant ties to the case and that potential witnesses were scattered among several counties, including the plaintiff's chosen forum. *Guerine*, 198 Ill. 2d at 525-26.

This court again had the opportunity to review the doctrine of intrastate *forum non conveniens* in *Dawdy*, 207 Ill. 2d 167. In *Dawdy*, the plaintiff, a Green County resident, was injured in an accident involving a truck driven by a Union Pacific employee in Macoupin County. Plaintiff filed suit in Madison County and defendants filed a motion to transfer the cause from Madison County to adjacent Macoupin County under the doctrine of intrastate *forum non conveniens*. Union Pacific is a foreign corporation doing business in Macoupin County, and its employee driver was a resident of Macoupin County. Most of the witnesses resided in or near Macoupin County, and none of them resided in Madison County.

In applying the *forum non conveniens* factors, the *Dawdy* majority concluded that the circuit court abused its discretion in denying defendants' motion to transfer the cause to Macoupin County. *Dawdy*, 207 Ill. 2d at 177. The *Dawdy* court first examined the private interest factor of relative ease of access to evidence and

determined that because the location of the accident was in Macoupin County and the identified witnesses were, on a whole, closer to Macoupin County than Madison County, the private interest factors "slightly" weighed in favor of Macoupin County. *Dawd*y, 207 Ill. 2d at 178. The court also recognized that the possibility of having a jury view the scene of the accident could be accomplished more expeditiously if the case were tried in Macoupin County. *Dawdy*, 207 Ill. 2d at 179. The fact that the plaintiff's attorneys maintained an office in Madison County and defendants' attorneys were located a short distance away in St. Clair County was accorded little weight. *Dawdy*, 207 Ill. 2d at 179. The court rejected plaintiff's contention that trial in an adjacent county was conclusively not inconvenient for a defendant and emphasized that "no single *forum non conveniens* factor should be accorded central emphasis or conclusive effect." *Dawdy*, 207 Ill. 2d at 180, citing *Jones*, 93 Ill. 2d at 373. The *Dawdy* court concluded that, on a whole, the private interest factors favored the convenience of Macoupin County over Madison County. *Dawdy*, 207 Ill. 2d at 180.

The *Dawdy* court then determined that the public interest factors strongly weighed against Madison County. *Dawdy*, 207 Ill. 2d at 180-81. Although the court recognized that court congestion was relatively insignificant, the crowded docket of Madison County was " 'of great concern.' " *Dawdy*, 207 Ill. 2d at 181, quoting *Bland*, 116 Ill. 2d at 230. Moreover, the fact that the accident occurred in Macoupin County gave that county a local interest in the action. *Dawdy*, 207 Ill. 2d at 183. The court further concluded that the residents of Madison County should not be burdened with jury duty because the action did not arise in and had no relation to Madison County. *Dawdy*, 207 Ill. 2d at 183.

The *Dawdy* court distinguished *Guerine* on the basis that, in *Dawdy*, none of the witnesses resided in the plaintiff's chosen forum. *Dawdy*, 207 Ill. 2d at 184. The court acknowledged that deference to plaintiff's choice of Madison County was reduced because he did not reside there and the action did not arise there. *Dawdy*, 207 Ill. 2d at 184. Accordingly, the court held that the circuit court of Madison County abused its discretion in denying defendants' motion to transfer venue to Macoupin County based on the doctrine of intrastate *forum non conveniens*. *Dawdy*, 207 Ill. 2d at 185.

We now examine the current case under our existing doctrine of intrastate *forum non conveniens*. Defendants argue the circuit court of St. Clair County erred in denying its motion to transfer this cause of action to Clinton County based on the doctrine of *forum non conveniens*. Plaintiff argues that the potential witnesses in this case are scattered among several counties and two states. She also argues that defendants have failed to show that Clinton County's connections to this litigation are predominate and that the balance of factors strongly favors transfer.

In the instant case, like *Guerine*, both St. Clair County and Clinton County have significant ties to the case and the potential witnesses are scattered throughout several counties in the state, as well as Indiana and Missouri. Defendants argue, however, that the *forum non conveniens* factors overwhelmingly favor trial in Clinton County, rather than where the suit was filed, in adjoining St. Clair County. Defendants contend that private interests weigh in favor of Clinton County because most of the witnesses reside in Clinton County and will have to travel somewhat farther to a trial in St. Clair County. Defendants contend that public interest factors also weigh in favor of Clinton County because the accident occurred in Clinton County, the decedent resided in Clinton County, the decedent's widow resides in Clinton County, and the St. Clair County court's docket is congested. Defendants contend St. Clair County has no connection to this litigation.

Defendants mischaracterize the facts. First, defendants ignore the fact that Norfolk, a foreign corporation, recognized St. Clair County as an appropriate forum by designating as its registered agent for service an individual residing in St. Clair County. Second, defendants ignore important witnesses located in Belleville, St. Clair County, St. Louis, Missouri, and Springfield, Sangamon County, Illinois. Finally, defendants have listed ambulance personnel, hospital personnel, firefighters, and auto body repair personnel from Clinton County as potential witnesses, but have not identified who these people are, where they live, or what, if any, relevant testimony they might provide.

In weighing the private and public interest factors, we conclude that the total circumstances of this case do not strongly favor transfer to Clinton County. First, we recognize that "[i]t is assumed on a

*forum non conveniens* motion that the plaintiff's chosen forum is a proper venue for the action." *Dawdy*, 207 Ill. 2d at 182. Plaintiff's choice of forum is entitled to substantial deference. *Guerine*, 198 Ill. 2d at 521 ("the battle over forum begins with the plaintiff's choice already in the lead"). However, neither the plaintiff's residence nor the site of the accident is located in St. Clair County and, thus, plaintiff's choice of St. Clair County is entitled to *somewhat* less deference. *Guerine*, 198 Ill. 2d at 517; *Dawdy*, 207 Ill. 2d at 173-74. " '[W]hile the deference to be accorded to a plaintiff regarding his choice of forum is less when the plaintiff chooses a forum other than where he resides *** nonetheless the deference to be accorded is only *less*, as opposed to *none*.' " (Emphases in original.) *Guerine*, 198 Ill. 2d at 518, quoting *Elling v. State Farm Mutual Automobile Insurance Co.*, 291 Ill. App. 3d 311, 318 (1997).

Defendants assert that trial in Clinton County would be more convenient to the plaintiff. However, "defendants cannot assert that the plaintiff's chosen forum is inconvenient to the plaintiff." *Guerine*, 198 Ill. 2d at 518.

In weighing the private interest factors, we note that although the accident occurred in Clinton County, a view of the accident site is not appropriate. The record indicates that after Gerald's death, the railroad crossing was substantially changed. The noncomplying crossbuck was replaced and growing crops, brush, and weeds were cut back several hundred feet in each direction. Thus, the preexisting conditions alleged to have caused the accident no longer exist and a jury view of the accident site as it existed on the occurrence date is not possible. On the other hand, plaintiff's investigator, who resides in St. Clair County, is the only witness who documented in photographs and videotape the crossing conditions at the time of the accident. That documentation is located in St. Clair County. Accordingly, defendants have failed to show that trial in Clinton County is favored because it is the county where the accident occurred.

Even though the accident occurred in Clinton County, the only eyewitnesses to the accident reside in Indiana, and it appears the majority of relevant trial witnesses do not reside in Clinton County. Those witnesses include plaintiff's treating physicians from St. Louis, Madison County, and St. Clair County, the medical examiner from

St. Louis, who conducted the autopsy, the plaintiff's investigator from St. Clair County, the Commerce Commission state rail safety program inspector and its administrator from Springfield, and the three individual defendants. Rather, most of the trial witnesses are disbursed among several counties, St. Louis, Missouri, and Indiana, and will be required to travel regardless of the place of trial. Defendants have therefore failed to show that trial in Clinton County would be more convenient than St. Clair County for most of the witnesses.

Defendants' assertion that this case has absolutely no connection to St. Clair County is factually inaccurate and misleading. Here, the record does not support defendants' claim that the trial court did not properly consider or apply the relevant *forum non conveniens* factors.

In this case, no affidavits have been filed stating that St. Clair County would be an inconvenient forum for any of the witnesses. In fact, the parties' attorneys would be required to travel from their offices in St. Clair County to try this case in Clinton County. We acknowledge, however, that the location of the parties' attorneys is accorded little weight in determining a *forum non conveniens* motion. *Boner v. Peabody Coal Co.*, 142 Ill. 2d 523, 534 (1991).

Not only have defendants not claimed any inconvenience whatsoever in trying this case in St. Clair County, defendants have not shown any impediments to accessing sources of testimonial, documentary, and real evidence. None of defendants' arguments assert any real inconvenience to anyone or any practical problems militating against trying this case in St. Clair County. We reiterate that the defendant must show that the plaintiff's chosen forum is inconvenient to the defendant and that another forum is more convenient to all parties. *Guerine*, 198 Ill. 2d at 518.

We discern no inconvenience for the defendants to try this case in St. Clair County when Clinton and St. Clair Counties are adjacent, and travel distances for likely witnesses are minimally different. When adjoining counties are involved, " ' "[t]he battle over the forum results in a battle over the minutiae." ' " *Guerine*, 198 Ill. 2d at 519-20, quoting *Peile*, 163 Ill. 2d at 335, quoting *Peile v. Skelgas, Inc.*, 242 Ill. App. 3d 500, 522 (1993) (Lewis, J., specially concurring). As this court noted in *Guerine*, "We live in a smaller world ***. Today, we are connected by interstate highways, bustling airways,

telecommunications, and the world wide web. Today, convenience–the touchstone of the *forum non conveniens* doctrine–has a different meaning." *Guerine*, 198 Ill. 2d at 525.

In considering the public interest factors, Clinton County has an interest in deciding a controversy involving an accident that occurred in Clinton County. The facts, however, demonstrate that St. Clair County has a legitimate interest in deciding a local controversy involving one of its residents, Norfolk, a foreign corporation that has its registered agent for service located in its county. Norfolk railroad tracks traverse all of St. Clair County, with approximately eight trains per day passing the Langenhorst property in Clinton County and entering St. Clair County on the same railroad line. See 735 ILCS 5/2–102(a) (West 2000) (in the case of a foreign corporation, residence is defined as any county where the corporation has an office or is doing business). Even though St. Clair County residents will bear the burden of jury duty and trial expense, St. Clair County has as much interest in deciding a controversy involving one of its residents who operates trains in its county as does Clinton County. This is particularly true when, as here, the defendant railroad maintains similar rural crossings in St. Clair County and this same railway line bisects all of St. Clair County. Thus, defendants have failed to show that St. Clair County has no connection to this litigation.

Transfer to Clinton County is also not required by the court docket of St. Clair County, particularly when one of the defendants is a "resident" of St. Clair County. See *Guerine*, 198 Ill. 2d at 525. Moreover, in ruling on defendants' motion, the St. Clair County circuit court did not note any administrative problems in relation to its court docket or in its ability to try this case in an expeditious manner. Rather, it specifically noted that it would have no difficulty trying this case in a timely manner. When deciding *forum non conveniens* issues, the trial court is in the better position to assess the burdens on its own docket. *Boner*, 142 Ill. 2d at 538-39. "Court congestion is a relatively insignificant factor, especially where the record does not show the other forum would resolve the case more quickly." *Guerine*, 198 Ill. 2d at 517, citing *Brummett v. Wepfer Marine, Inc.*, 111 Ill. 2d 495, 503 (1986). Here, defendants have not shown that the case would be resolved more quickly in Clinton County than in St. Clair County. Simply stated, the record, including

the trial court's statement that court congestion in St. Clair County is not a concern, does not support defendants' contention.

Absent factors strongly favoring transfer, plaintiff's substantial interest in choosing the forum where his or her rights will be vindicated should rarely be disturbed. See *Guerine*, 198 Ill. 2d at 517, citing *Griffith*, 136 Ill. 2d at 106; *Jones*, 93 Ill. 2d at 372-73; *Gulf Oil*, 330 U.S. at 508-09, 91 L. Ed. at 1062-63, 67 S. Ct. at 843; Restatement (Second) of Conflict of Laws §84, Comment *c* (1971). As we have indicated, this standard does not foreclose *legitimate* transfers when the balance of factors *strongly* favors litigation in another forum. *Guerine*, 198 Ill. 2d at 521.

With these principles in mind, we have evaluated the total circumstances of this case and conclude that the balance of private and public interest factors does not strongly favor Clinton County over St. Clair County. In this case, defendants have failed to meet their burden of showing, as they allege in their brief, that there is "no connection" to St. Clair County, that any of defendants or witnesses would be inconvenienced by a trial in St. Clair County, that trial would be impractical in St. Clair County, or that it would be unfair to burden the citizens of St. Clair County with trial in this case. This is not a case of *exceptional circumstances* where the interests of justice require a trial in a more convenient forum. See *Guerine*, 198 Ill. 2d at 520; *Peile*, 163 Ill. 2d at 335-36; *Torres*, 98 Ill. 2d at 346. Nor is this a case where the trial court's determination was irrational or lacking any support in the record. Defendants have failed to show that no reasonable person would take the view adopted by the trial court. We hold that the trial court did not abuse its discretion in denying an intrastate *forum non conveniens* motion to transfer the case to an adjacent county when, as here, most of the potential trial witnesses are scattered and no single county enjoys a predominant connection to the litigation. See *Guerine*, 198 Ill. 2d at 526. In fact, based on the location of the defendants and material witnesses, as well as the location of the evidence, St. Clair County would appear to be a more convenient forum for defendants as well as plaintiff.

We acknowledge the dissent's belief that today's opinion is at odds with *Dawdy*. However, we find *Dawdy* distinguishable on three grounds. First, in *Dawdy*, none of the witnesses resided in the plaintiff's chosen forum. Second, in *Dawdy*, the possibility of a jury

view of the accident scene was a practical consideration. Finally, in *Dawdy*, the defendant railroad was attempting to transfer the cause to the defendant employee's county of residence.

We emphasize that *Dawdy* did not overrule *Guerine*. *Dawdy* is not irreconcilable with *Guerine*, nor does it conflict with *Guerine*. Indeed, in *Dawdy*, this court expressly distinguished the circumstances presented from those presented in *Guerine* and noted that *Guerine* was based on the totality of the circumstances. *Dawdy*, 207 Ill. 2d at 183-84.

We recognize that the dissent would prefer to replace "the convenience of the parties" as the "touchstone" of *forum non conveniens* analysis to focusing on "the more appropriate forum" based on "where the cause of action arose." This shift is clearly not warranted and would result in obliteration of the venue statute.

We reiterate that the standard of review on a *forum non conveniens* motion is abuse of discretion, and defendants must meet a high burden of showing that the "balance of factors *strongly* favors litigation in another forum" (emphasis added) (*Guerine*, 198 Ill. 2d at 521), and our holding is compelled under that standard. The dissent even concludes that "the convenience of the parties does not strongly favor one venue over the other." Slip op. at 30 (Garman, J., dissenting, joined by Thomas, C.J., and Karmeier J.). The total circumstances of this case simply do not strongly favor transfer to Clinton County. Accordingly, we hold that the circuit court did not abuse its discretion in denying defendants' motion to transfer this cause to Clinton County based on the doctrine of intrastate *forum non conveniens*.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the appellate court.

*Affirmed.*

JUSTICE GARMAN, dissenting:

˘18˘

Less than three years ago, this court addressed the doctrine of *forum non conveniens* in *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167 (2003). *Dawdy* was decided in the wake of *First American Bank v. Guerine*, 198 Ill. 2d 511 (2002), another *forum non conveniens* decision. In the present case, the appellate court denied defendants leave to appeal the circuit court's denial of their motion to transfer venue from St. Clair County to Clinton County. We ordered the appellate court to reconsider its judgment in light of *Dawdy* and *Guerine*. In affirming the judgment of the circuit court on remand, the appellate court speculated that it would not have been "ordered to reconsider a venue transfer question in light of both *Dawdy* and *Guerine* if the supreme court did not think both decisions still represented good law." 354 Ill. App. 3d 1103, 1109. Until today, *Dawdy* and *Guerine* did both represent good law, but the majority's decision places this case directly at odds with *Dawdy*, significantly obscuring our *forum non conveniens* jurisprudence. Accordingly, I dissent.

## I. Divergence from *Dawdy*

In *Dawdy*, the plaintiff, a resident of Greene County, was driving a tractor in Macoupin County when he collided with a truck operated by an employee of the Union Pacific Railroad Company (Union Pacific). *Dawdy*, 207 Ill. 2d at 169. The plaintiff filed a lawsuit against Union Pacific and its employee in the circuit court of Madison County alleging that the employee negligently operated the truck, that Union Pacific negligently failed to train and supervise the employee, and that Union Pacific negligently failed to ensure that attachments on the truck would not extend beyond the width of the vehicle when it was operated on public streets. *Dawdy*, 207 Ill. 2d at 169. The employee was a resident of Macoupin County. *Dawdy*, 207 Ill. 2d at 170. Union Pacific, a Delaware corporation with its principal place of business in Omaha, Nebraska, did business in both Macoupin County and Madison County and operated a facility in the latter. *Dawdy*, 207 Ill. 2d at 170. The 18 potential witnesses resided in various counties. *Dawdy*, 207 Ill. 2d at 170.

The defendants filed a motion to transfer venue from Madison County to Macoupin County under the doctrine of *forum non conveniens*, which the circuit court denied. *Dawdy*, 207 Ill. 2d at 170.

On appeal, the appellate court affirmed the judgment of the circuit court. *Dawdy*, 207 Ill. 2d at 171. In reversing, this court balanced the private and public interest factors relevant to the *forum non conveniens* analysis and concluded that the circuit court abused its discretion in denying the defendant's motion to transfer. *Dawdy*, 207 Ill. 2d at 185.

With respect to the private interest factors, we initially examined the relative ease of access to testimonial evidence. *Dawdy*, 207 Ill. 2d at 177. Two of the potential witnesses resided in Macoupin County, none resided in Madison County, and on the whole, the potential witnesses resided closer to Macoupin County than to Madison County. *Dawdy*, 207 Ill. 2d at 178. Therefore, we concluded that, insofar as ease of access to testimonial evidence was concerned, Macoupin County was a slightly more convenient venue than Madison County. *Dawdy*, 207 Ill. 2d at 178.

We next turned to the possibility of viewing the premises of the accident. *Dawdy*, 207 Ill. 2d at 178. The appellate court apparently had given this factor no weight, concluding that although the accident occurred in Macoupin County, there was nothing in the record to indicate that a view of the accident site would be necessary. *Dawdy*, 207 Ill. 2d at 178. We emphasized that the convenience factor of viewing the premises of the accident "is not concerned with the *necessity* of viewing the site of the injury, but rather is concerned with the *possibility* of viewing the site, if appropriate." (Emphases in original.) *Dawdy*, 207 Ill. 2d at 178. Accordingly, we determined that if the trial court were later to decide that viewing the accident site would be appropriate, it would not make sense for a jury composed of Madison County residents to travel to Macoupin County to do so. *Dawdy*, 207 Ill. 2d at 179.

Finally, we assessed other practical considerations that would make trying the case easy, expeditious, and inexpensive. *Dawdy*, 207 Ill. 2d at 179. In doing so, we accorded "little weight" to the locations of the offices of the parties' attorneys, which were situated in Madison County and neighboring St. Clair County. *Dawdy*, 207 Ill. 2d at 179. We also declined to accept the contention that since Madison County is adjacent to Macoupin County, Madison County conclusively could not be an inconvenient venue for the defendants. *Dawdy*, 207 Ill. 2d at 180.

Turning to the public interest factors, we first examined court congestion. *Dawdy*, 207 Ill. 2d at 181. The 1998 annual report of the Administrative Office of the Illinois Courts indicated that there were 1,867 jury actions for damages in excess of $50,000 pending in Madison County, and only 137 comparable actions pending in Macoupin County. *Dawdy*, 207 Ill. 2d at 181. Moreover, the average time between filing and verdict for such actions was one year less in Macoupin County, at 17.3 months, than in Madison County, at 29.3 months. *Dawdy*, 207 Ill. 2d at 181. Thus, Madison County's docket was significantly more congested than that of Macoupin County. *Dawdy*, 207 Ill. 2d at 181.

Next, we discussed the nature and extent of local interests in deciding the controversy. *Dawdy*, 207 Ill. 2d at 181-82. The facts Union Pacific conducted business in Madison County and its employee maintained a post office box there were not dispositive of this aspect of the *forum non conveniens* analysis. *Dawdy*, 207 Ill. 2d at 182. Rather, we found it significant that the accident occurred in Macoupin County, not Madison County; that the plaintiff did not reside in Madison County; that the individual defendant did not reside in Madison County; that the individual defendant did reside in Macoupin County; that the witnesses were, in general, unconnected to Madison County, despite the fact some worked there; and that some of the witnesses resided in Macoupin County. *Dawdy*, 207 Ill. 2d at 183. Accordingly, we concluded that Madison County had "little or no interest" in trying the action, and that Macoupin County, on the contrary, had a "strong connection with and interest in" the action. *Dawdy*, 207 Ill. 2d at 183.

Finally, we examined the relative propriety of imposing jury duty on the residents of Madison County and Macoupin County. *Dawdy*, 207 Ill. 2d at 183. With respect to this consideration, we concluded that Madison County residents should not be burdened with jury duty, given that the action did not arise in, and had no relation to, their county. *Dawdy*, 207 Ill. 2d at 183. Relatedly, we reasoned it would not be unfair to burden the residents of Macoupin County with jury duty, given Macoupin County's significant interest in the dispute. *Dawdy*, 207 Ill. 2d at 183.

After individually considering the private and public interest factors relevant to the *forum non conveniens* analysis, we concluded

˘21˘

that the weight of the public interest factors "greatly" favored Macoupin County, and that the private interest factors favored it as well. *Dawdy*, 207 Ill. 2d at 184. We also noted that the deference we would accord to the plaintiff's choice of venue was reduced, because he did not reside there, and his cause of action did not arise there. *Dawdy*, 207 Ill. 2d at 184. In light of these considerations, we held "the balance of factors strongly favor[ed] transfer to Macoupin County" (*Dawdy*, 207 Ill. 2d at 184), and the circuit court abused its discretion in denying the defendants' motion to transfer venue (*Dawdy*, 207 Ill. 2d at 185).

The majority disregards significant aspects of our analysis in *Dawdy* in affirming the circuit court's denial of defendants' motion to transfer in this cause. This disregard begins with its discussion of the private interest factors in the *forum non conveniens* analysis. Initially, the majority ignores *Dawdy*'s conclusion that the possibility of viewing the accident site, not the necessity of doing so, is the relevant consideration in weighing this factor. *Dawdy*, 207 Ill. 2d at 178. As we noted in *Dawdy*, "the necessity or propriety of viewing the scene is a decision left within the discretion of the trial court." *Dawdy*, 207 Ill. 2d at 179. The majority concludes that "a view of the accident site is not appropriate," reasoning that the conditions alleged to have caused the accident no longer exist, so a jury view of the site as it existed on the date of the accident is not possible. Slip op. at 14. This conclusion is not ours to make. It displaces the role of the trial court in determining the propriety of an accident view. The mere facts that the accident site no longer appears exactly as it did on the date of the accident and that plaintiff's investigator has photographs and videotape of the accident site do not eliminate the possible usefulness of a jury view. Moreover, contrary to what the majority suggests, the investigator's St. Clair County residency and the location of his investigation materials in St. Clair County are completely irrelevant to whether a jury view of the accident site might be appropriate. Slip op. at 14.

Next, in evaluating the relative ease of access to testimonial evidence, the majority fails to conduct a balanced analysis of the residency of potential witnesses. As mentioned, in *Dawdy*, we focused primarily on the facts that two of the potential witnesses resided in Macoupin County, none resided in Madison County, and on the whole, the potential witnesses resided closer to Macoupin

County than to Madison County. *Dawdy*, 207 Ill. 2d at 178. In this case, the majority concludes that defendants "failed to show that trial in Clinton County would be more convenient than St. Clair County for most of the witnesses" (slip op. at 14) without once mentioning that six witnesses identified by plaintiff in her answers to defendants' interrogatories are Clinton County residents. These witnesses appear to be friends and relatives of the decedent with knowledge of his quality of life and neighbors of the decedent who were present at the scene of the accident. In addition, the deputy sheriff who investigated the accident site and prepared an accident report, and the plaintiff herself, both of whom defendants have identified as potential witnesses, are residents of Clinton County.

Other potential witnesses with identities ascertainable from the record are scattered among several Illinois counties, Indiana, and Missouri. The Illinois witnesses include the decedent's two initial emergency care physicians, who reside in Madison County and St. Clair County; plaintiff's investigator, who resides in St. Clair County; the defendant division engineer, who resides in Macon County; the Illinois Commerce Commission inspector responsible for investigating the accident site; and the Illinois Commerce Commission administrator in charge of evaluating the inspector's report. The Indiana witnesses include the defendant train conductor, who resides in Patoka, Indiana, and the defendant train engineer, who resides in Hazelton, Indiana. The Missouri witness is the medical examiner who performed an autopsy on the decedent in St. Louis, Missouri. Because we do not know the specific residences of all these witnesses, we cannot say for certain how far each would have to travel to testify in St. Clair County or Clinton County. However, a fair characterization of the locations of the potential witnesses mentioned thus far is that eight reside in Clinton County, two reside in St. Clair County, and the other nine would, on average, have to travel approximately the same distance to reach either Clinton County or St. Clair County.

The remainder of the potential witnesses, whose identities are not ascertainable from the record, include physicians and hospital personnel who treated the decedent in St. Louis, Missouri; hospital personnel, other than the two physicians already mentioned above, who were involved in the decedent's initial treatment in Clinton County; and personnel from the three Clinton County ambulance

services, the two Clinton County fire departments, and the Clinton County auto body repair shop who were involved in responding to the accident.

There is no perfect equation for determining whether access to potential witnesses is easier in one county than in another, but if, in *Dawdy*, Macoupin County provided easier access to witnesses than Madison County, then we can certainly say the same of Clinton County vis-à-vis St. Clair County in this case. Here, in contrast to *Dawdy*, a significantly larger proportion of the potential witnesses resides in the transferee county, and like *Dawdy*, the potential witnesses appear, on the whole, to reside closer to the transferee county than to the county where suit was filed. It is true that two potential witnesses reside in the county where suit was filed, but the St. Clair County residency of plaintiff's investigator should be heavily discounted since plaintiff hired the investigator after the accident to perform services on her behalf, presumably in contemplation of litigation. See, *e.g.*, *Bland v. Norfolk & Western Ry. Co.*, 116 Ill. 2d 217, 227 (1987) (noting that undue weight should not be given to the location of a plaintiff's treating physician or expert since "[t]o do so would allow a plaintiff to easily frustrate the *forum non conveniens* principle by selecting as a witness a treating physician or expert in what would, in reality, be an inconvenient forum"). More importantly, the fact two potential witnesses reside in St. Clair County is relatively inconsequential when considered in conjunction with the residencies of all the other potential witnesses.

The majority also contradicts *Dawdy*'s discussion of other practical considerations relevant to the *forum non conveniens* analysis. Specifically, the majority ignores our refusal in *Dawdy* to "accept the contention that trial in an adjacent county is conclusively not inconvenient for a defendant" (*Dawdy*, 207 Ill. 2d at 180), stating that it "discern[s] no inconvenience for the defendants to try this case in St. Clair County when Clinton and St. Clair Counties are adjacent, and travel distances for likely witnesses are minimally different" (slip op. at 15). The fact the counties are adjacent to one another is, in itself, irrelevant. Their locations factor into the present *forum non conveniens* analysis only insofar as they relate to the ease of access to the potential witnesses, which, as discussed above, favors Clinton County.

In addition to disregarding *Dawdy*'s analysis of the private interest *forum non conveniens* factors, the majority also departs from *Dawdy*'s analysis of the public interest factors. In *Dawdy*, with respect to the local interests in deciding the controversy, we declined to attach dispositive significance to the fact the corporate defendant did business in the county where the lawsuit was filed. *Dawdy*, 207 Ill. 2d at 182 ("the fact that the defendant conducts business within Madison County is not a dispositive factor in this case"). That, however, is precisely what the majority does here.

The majority observes that "Norfolk *** has its registered agent for service located in [St. Clair County]" and that "Norfolk railroad tracks traverse all of St. Clair County." Slip op. at 16. According to the majority, "St. Clair County has as much interest in deciding a controversy involving one of its residents who operates trains in its county as does Clinton County. This is particularly true when, as here, the defendant railroad maintains similar rural crossings in St. Clair County and this same railway line bisects all of St. Clair County." Slip op. at 16. This reasoning is misguided. The mere fact Norfolk does business in St. Clair County is greatly outweighed by other considerations far more relevant to evaluating the nature and extent of each county's local interest in this case.

As mentioned, in evaluating this factor in *Dawdy*, we found it significant that the accident occurred in the transferee county; that the plaintiff did not reside in the county where suit was filed; that the individual defendant did not reside in the county where suit was filed; that the individual defendant did reside in the transferee county; that the witnesses were, in general, unconnected to the county where suit was filed; and that some of the witnesses resided in the transferee county. See *Dawdy*, 207 Ill. 2d at 183. We placed particular emphasis on the fact the accident occurred in the transferee county. *Dawdy*, 207 Ill. 2d at 183 ("Most significantly, the fact that the accident occurred in Macoupin County gives the action a local interest"). In this case, as in *Dawdy*, the accident occurred in the transferee county. Moreover, the plaintiff and the individual defendants do not reside in the county where suit was filed. As for the potential witnesses, they appear, on the whole, to reside closer to the transferee county than to the county where suit was filed, and a larger proportion of them actually resides in the transferee county than was the case in *Dawdy*.

The only distinction between this case and *Dawdy* in terms of the considerations in question is that, here, none of the individual defendants reside in the transferee county. However, the significance of this distinction is offset by the fact that plaintiff, unlike the plaintiff in *Dawdy*, is a resident of the transferee county. In *Dawdy*, the plaintiff was a resident of Greene County, suit was filed in Madison County, and the defendants wished to transfer venue to Macoupin County. *Dawdy*, 207 Ill. 2d at 169-70. Here, plaintiff resides in Clinton County, suit was filed in St. Clair County, and defendants wish to transfer venue to Clinton County, plaintiff's county of residence.

In sum, based on the very same considerations we took into account in evaluating the nature and extent of the local interests at play in *Dawdy*, it is clear that the controversy at issue here is local to Clinton County, and that Clinton County has a strong interest in resolving it. The majority unduly emphasizes the fact that Norfolk does business in St. Clair County to the exclusion of these other, more important considerations.

I would briefly note that whether it is appropriate to impose jury duty on the residents of a county is related to the strength of a county's local interest in a controversy. See, *e.g.*, *Dawdy*, 207 Ill. 2d at 183. The majority finds it unproblematic that "St. Clair County residents will bear the burden of jury duty and trial expense" in this case. Slip op. at 16. However, because plaintiff's action did not arise in, and has little relation to, St. Clair County, it would be unfair to burden St. Clair County residents with jury duty in this matter. Clinton County, on the contrary, has a strong local interest in the controversy, and it would be entirely appropriate for Clinton County residents to serve as jurors.

Finally, in assessing court congestion, the majority fails to examine the statistical criteria we considered in *Dawdy* and instead focuses solely on the circuit court judge's assessment of the St. Clair County circuit court's docket. Slip op. at 16. In *Dawdy*, we looked to the overall number of pending jury actions for damages over $50,000 and the time to verdict for such actions in determining that Madison County's docket was significantly more congested than that of Macoupin County. *Dawdy*, 207 Ill. 2d at 181. Here, the 2000 annual report of the Administrative Office of the Illinois Courts, which

defendants called to the circuit court's attention, reveals that, in 2000, there were 423 jury actions for damages in excess of $50,000 pending in St. Clair County, but only 37 comparable actions pending in Clinton County. Administrative Office of the Illinois Courts, 2000 Annual Report of the Illinois Courts, Statistical Summary 19, 28. Moreover, the average time between filing and verdict in such cases was 31.9 months in St. Clair County, but only 18 months in Clinton County. 2000 Annual Report of the Illinois Courts, Statistical Summary 56. The majority offers no account of these statistics, content simply to state that the St. Clair County circuit court "specifically noted that it would have no difficulty trying this case in a timely manner." Slip op. at 16. In support of this rationale, the majority cites *Boner v. Peabody Coal Co*. for the proposition that a circuit court is in a better position than a reviewing court to assess the burdens on its own docket. Slip op. at 16, citing *Boner*, 142 Ill. 2d at 538-39. This may be so, but it does not mean that a reviewing court should turn a blind eye to objective data in weighing one venue's congestion against another's. *Boner*, in fact, did consider court data in arriving at its conclusion that court congestion did not necessitate transferring the action at issue to Gallatin County. *Boner*, 142 Ill. 2d at 539 ("Moreover, the 1989 statistics favor St. Clair County rather than Gallatin County"). Thus, while "[t]he court congestion factor, by itself, is relatively insignificant" (*Dawdy*, 207 Ill. 2d at 181), and is not alone sufficient to justify transfer (*Dawdy*, 207 Ill. 2d at 181), in this case, this factor does weigh in favor of Clinton County over St. Clair County.

## II. *Guerine*, *Dawdy*, and the Instant Case

It is clear, based on the foregoing, that the majority wishes to distance this court from the reasoning we applied in *Dawdy*. I cannot endorse this approach, as it erroneously suggests that *Dawdy* is irreconcilable with *Guerine*, when, in fact, *Dawdy* and *Guerine* can be applied consistently to govern the outcome of this case.

The lawsuit at issue in *Guerine* arose from a car accident involving the individual defendant and the decedent. *Guerine*, 198 Ill. 2d at 512. A boat trailer broke away from the individual defendant's vehicle, crossed into oncoming traffic, and struck the decedent's vehicle, killing her. *Guerine*, 198 Ill. 2d at 512. The plaintiff bank, as

the executor of the decedent's estate, and the decedent's two minor sons, by their father, the decedent's husband, filed suit in Cook County against the individual defendant for negligence and against the manufacturer of the boat trailer for product liability. *Guerine*, 198 Ill. 2d at 513. The individual defendant resided in Cook County, the corporate defendant was headquartered in Mishawaka, Indiana, and the accident had occurred in De Kalb County. *Guerine*, 198 Ill. 2d at 512-13, 524. The circuit court allowed the corporate defendant's motion to transfer the action out of Cook County, and the appellate court denied the plaintiffs leave to appeal. *Guerine*, 198 Ill. 2d at 513-14.

In reversing the judgment of the circuit court, we held "that a trial court abuses its discretion in granting an intrastate *forum non conveniens* motion to transfer venue where *** the potential trial witnesses are scattered among several counties, including the plaintiff's chosen forum, and no single county enjoys a predominant connection to the litigation." *Guerine*, 198 Ill. 2d at 526. The potential witnesses were "scattered among several counties" because they resided in Cook County, De Kalb County, Du Page County, Kane County, and Winnebago County. See *Guerine*, 198 Ill. 2d at 524-25. There were various reasons why no single county enjoyed "a predominant connection to the litigation," as reflected in our analysis of the relevant private and public interest factors. See *Guerine*, 198 Ill. 2d at 524-25. While the accident occurred in De Kalb County, and thus gave the plaintiffs' negligence claim against the individual defendant a "local flavor," the plaintiffs' product liability claim against the corporate defendant was "less localized." *Guerine*, 198 Ill. 2d at 525. Moreover, despite the accident's occurrence in De Kalb County, Cook County clearly was more accessible to the parties. *Guerine*, 198 Ill. 2d at 524. The individual defendant resided there and never filed a *forum non conveniens* motion, and any representatives of the corporate defendant would have had to travel through Cook County on their way to either De Kalb County or Kane County, the other potential venues. *Guerine*, 198 Ill. 2d at 524. In addition, as we recognized in our holding, the potential witnesses were disbursed among several counties, including the county where the plaintiffs filed suit. *Guerine*, 198 Ill. 2d at 524-25.

We distinguished *Guerine* in *Dawdy*. There we observed that, unlike in *Guerine*, none of the witnesses resided in the county where

˘28˘

suit was filed, and the transferee county had a predominant connection to the litigation. *Dawdy*, 207 Ill. 2d at 184 ("In this case, however, none of the witnesses reside in Madison County and Macoupin County has a predominant connection to this case"). It is significant that, in addition to the fact that none of the potential witnesses resided in the county where suit was filed, on the whole they resided closer to the transferee county. *Dawdy*, 207 Ill. 2d at 178. Furthermore, while we did not explicitly elaborate on why the transferee county had a "predominant connection" to the case, our reasons were implicit in our analysis of the private and public interest factors. Unlike the individual defendant in *Guerine*, the individual defendant in *Dawdy* was a resident of the transferee county. See *Dawdy*, 207 Ill. 2d at 170, 183. In addition, unlike the mixed negligence-product liability action in *Guerine*, all of the plaintiff's negligence claims in *Dawdy* related to the specific accident at issue, which occurred in the transferee county. See *Dawdy*, 207 Ill. 2d at 169, 183. Moreover, the potential witnesses in *Dawdy* were more closely linked to the transferee county than in *Guerine*. See *Dawdy*, 207 Ill. 2d at 178.

The grounds on which the majority distinguishes *Dawdy* from the instant case are unpersuasive and likely to cause confusion. First, the majority asserts that "in *Dawdy*, none of the witnesses resided in the plaintiff's chosen forum." Slip op. at 17. It is true that, in this case, two potential witnesses are residents of the county where suit was filed, but this distinction should make no difference in the *forum non conveniens* analysis. As mentioned, the fact two potential witnesses reside in St. Clair County is relatively inconsequential when considered along with the residencies of all the other potential witnesses. Here, as in *Dawdy*, the potential witnesses appear, on the whole, to reside closer to the transferee county than to the county where suit was filed.

Second, the majority states that "in *Dawdy*, the possibility of a jury view of the accident scene was a practical consideration." Slip op. at 17. As discussed, the possibility of a jury view of the accident scene is likewise a practical consideration in this case.

Third, the majority notes that "in *Dawdy*, the defendant railroad was attempting to transfer the cause to the defendant employee's county of residence." Slip op. at 17. As with the majority's statement

regarding the residencies of the potential witnesses, this observation ignores the broader context of the *forum non conveniens* analysis. The residency of a defendant is most relevant to two of the *forum non conveniens* factors: the interest in deciding localized controversies locally, and the convenience of the parties. As to the former factor, even though none of the individual defendants reside in the transferee county, plaintiff does, thereby offsetting the effect this distinction would have in this case on the extent of the transferee county's local interest in the controversy. As to the convenience of the parties, the majority does not engage in a separate analysis of this factor, other than to state the obvious proposition that a defendant cannot prevail on a motion to transfer by simply asserting that the plaintiff's chosen venue is inconvenient to the plaintiff (slip op. at 14), and to conclude that defendants failed to show they would be inconvenienced by a trial in St. Clair County (slip op. at 16). The fact of the matter is that plaintiff will suffer no inconvenience by remaining in Clinton County to litigate this case, and defendants will be equally inconvenienced by trial in Clinton County or St. Clair County. Clinton County is plaintiff's county of residence, so even though she has indicated St. Clair County is not an inconvenient venue by filing suit there, Clinton County is similarly not inconvenient. The individual defendants reside in Macon County; Patoka, Indiana; and Hazelton, Indiana, and will have to travel comparably long distances to attend trial in either Clinton County or St. Clair County. Balancing these considerations, the convenience of the parties does not strongly favor one venue over the other. Thus, the fact that transferring this case would not, unlike in *Dawdy*, place it in the county of residence of one of the defendants has no bearing on this factor of the *forum non conveniens* analysis.

### III. Application of *Forum Non Conveniens* Factors

Turning explicitly to the facts of this case, it is clear the doctrine of *forum non conveniens* warrants the transfer of plaintiff's lawsuit to Clinton County.

Here, plaintiff is not a resident of St. Clair County, and the accident did not occur there. As a result, plaintiff's choice of St. Clair County as a venue for her lawsuit is entitled to less deference than would otherwise be appropriate. See *Guerine*, 198 Ill. 2d at 517; *Dawdy*, 207 Ill. 2d at 173-74.

On balance, the private interest factors weigh in favor of transfer. Plaintiff will suffer no inconvenience by litigating this case in Clinton County or St. Clair County, and the individual defendants will be equally inconvenienced by trial in either county. On the whole, the potential witnesses appear to reside closer to Clinton County than to St. Clair County, with a significant proportion of them actually residing in Clinton County. Furthermore, viewing the accident site might be deemed appropriate in this case at some future time, and the accident site is located in Clinton County. The fact the parties' attorneys' offices are located in St. Clair County is entitled to little weight.

In addition, the public interest factors weigh strongly in favor of transfer. It is apparent that the controversy at issue here is local to Clinton County, and that Clinton County has a strong interest in resolving it. The accident occurred in Clinton County, plaintiff is a resident of Clinton County, and the potential witnesses are more closely connected to Clinton County than to St. Clair County. Relatedly, because of Clinton County's strong local interest in the litigation and St. Clair County's comparatively weak interest, it would not be fair to obligate St. Clair County residents to serve as jurors in this matter. Finally, court statistics clearly show greater congestion in St. Clair County than in Clinton County.

For these reasons, I would reverse the judgment of the appellate court, which affirmed the circuit court's denial of defendants' motion to transfer venue, and order this cause transferred from St. Clair County to Clinton County.

CHIEF JUSTICE THOMAS and JUSTICE KARMEIER join in this dissent.