# Illinois Official Reports

## Appellate Court

---

**18 Rabbits, Inc. v. Hearthside Food Solutions, LLC, 2020 IL App (2d) 190574**

---

| | |
|---|---|
| Appellate Court Caption | 18 RABBITS, INC., Plaintiff-Appellee, v. HEARTHSIDE FOOD SOLUTIONS, LLC, Defendant-Appellant. |
| District & No. | Second District No. 2-19-0574 |
| Filed | February 3, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 19-L-42; the Hon. Robert W. Rohm, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Denise A. Lazar and Amy R. Michelau, of Barnes & Thornburg LLP, of Chicago, for appellant. |
| | William M. Mooney, of Law Offices of William M. Mooney, LLC, of Chicago, for appellee. |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion. Justices Hudson and Bridges concurred in the judgment and opinion. |

**OPINION**

Defendant, Hearthside Food Solutions, LLC, petitioned, pursuant to Illinois Supreme Court Rule 306(a)(2) (eff. Oct. 1, 2019) (interlocutory appeals by permission), for leave to appeal to this court, seeking to challenge the trial court's denial of its motion to dismiss plaintiff's complaint for *forum non conveniens*. We granted defendant's petition. On appeal, defendant argues that the trial court abused its discretion in denying its motion. We affirm.

## I. BACKGROUND

Plaintiff, 18 Rabbits, Inc., is a California corporation with headquarters in San Francisco, California. Defendant is a Delaware limited liability company with headquarters at 3500 Lacey Road in Downers Grove.

Plaintiff alleged that it hired defendant to toll manufacture[1] plaintiff's premium organic granola bars. In August 2016, the parties executed a mutual confidentiality agreement. On August 26, 2016, plaintiff met with defendant's employees at defendant's Grand Rapids, Michigan, facility to discuss the potential for defendant to manufacture the bars. Beginning on September 12, 2016, plaintiff's Illinois-based managers participated in multiple, weekly telephone calls with plaintiff. Defendant's managers represented that defendant could manufacture the bars to plaintiff's specifications and to satisfy all of plaintiff's customers' orders for the bars. On September 27, 2016, one of defendant's research and development employees received plaintiff's bar specifications. The following day, plaintiff presented defendant (at its Downers Grove headquarters) a request to obtain toll manufacturing credit from defendant. (Defendant apparently declined.)

Plaintiff further alleged that, during subsequent weekly telephone calls, several of defendant's Illinois- and Michigan-based employees continued to represent that defendant could toll manufacture the bars to plaintiff's specifications and could satisfy all customer orders. Plaintiff relied on defendant's representations and paid defendant to conduct, in November 2016, a low-quantity trial run of two types of its bars. The bars conformed to plaintiff's specifications. Thereafter, defendant continued to represent that it could toll manufacture plaintiff's bars to plaintiff's specifications and satisfy customer orders. Plaintiff relied on the representations and agreed to shift to defendant all of its bar production.

Plaintiff paid defendant tolling costs to complete three production runs of bars beginning on April 3, 2017, June 20, 2017, and July 20, 2017. Plaintiff supplied defendant with all the raw materials for each run, which was comprised of food ingredients and packaging supplies worth $600,000. Plaintiff paid defendant toll fees of about $437,782.68 for the three production runs.

Plaintiff further alleged that defendant partially performed (*i.e.*, it delivered fewer bars than promised, delivered materially nonconforming bars, delivered sealed cases of commingled conforming and nonconforming bars, and wasted plaintiff's raw materials) and delivered about $551,864.42 worth of conforming bars, which was substantially less than the $1,037,782.68

---

[1]Toll manufacturing is a type of arrangement where one party owns the inputs and outputs of a manufacturing process that is completed by another party. See *Eli Lilly & Co. v. Zenith Goldline Pharmaceuticals, Inc.*, 172 F. Supp. 2d 1060, 1068 n.9 (S.D. Ind. 2001).

plaintiff paid defendant. It further alleged that, as a result of defendant's production errors and mishandling of raw materials, it suffered the loss of its overpayment of toll fees to defendant. As a result of its partial performance, defendant did not satisfy all existing customer orders and plaintiff suffered loss of profits and loss of follow-up orders from those customers.

¶ 8      On September 19, 2017, plaintiff demanded compensation for its losses, and defendant paid plaintiff $110,213.28 in partial compensation.

¶ 9      On January 14, 2019, plaintiff sued defendant, alleging (1) breach of contract, (2) intentional misrepresentation/common-law fraud, (3) negligent misrepresentation, and (4) promissory estoppel. [2] As to the contract-based claims (*i.e.*, breach of contract and promissory estoppel), plaintiff argued that defendant did not adequately manufacture the bars according to plaintiff's specifications and in sufficient quantities. As to the tort-based claims (*i.e.*, intentional misrepresentation and negligent misrepresentation), it argued that defendant made misrepresentations concerning its ability to manufacture the bars to specifications and in sufficient quantities, where defendant was not capable of manufacturing and did not intend to manufacture the bars in conformance with specifications. Plaintiff sought the value of lost raw materials, lost toll payments, lost profits, and lost goodwill; costs and prejudgment interest from September 19, 2017, onwards; and any other relief the court deemed just.

¶ 10      In its answer, defendant denied plaintiff's key allegations, asserting that plaintiff did not establish specifications for many of its products and, in the middle of production runs and without advance notice, repeatedly changed its specifications and recipes for other products. Defendant also asserted several defenses, including failure to mitigate any damages, failure to state a claim, *laches*, waiver, undue delay, unclean hands, and estoppel.

¶ 11      On March 21, 2019, defendant moved to dismiss plaintiff's complaint, alleging *forum non conveniens*. Ill. S. Ct. R. 187(c)(2) (eff. Jan. 1, 2018). It argued that the bars were manufactured in Michigan; the courts in Kent County, Michigan, are far less congested than the Eighteenth Judicial Circuit in Du Page County (in 2017, about 1000 new civil filings in Kent County, Michigan, versus nearly 20,000 new filings in Du Page County); and that neither the public- nor private-interest factors were served by litigating the claims in Du Page County.

¶ 12      In a signed declaration (not an affidavit) attached to defendant's memorandum supporting its motion, Robert Wojcik, defendant's vice president of manufacturing, stated that plaintiff's employees visited defendant's Grand Rapids facility in connection with the manufacture of plaintiff's bars. Plaintiff primarily interacted with defendant's employees based in Michigan: Pam Lauroff (national accounts executive), Ryan Fouch (director of quality assurance), and Wojcik. He also stated that most of defendant's employees with direct knowledge of plaintiff's claims are primarily located at its Grand Rapids facility. If an on-site inspection is required, it would necessarily occur at the Grand Rapids facility.

¶ 13      In its response, plaintiff argues that several aspects of the contract occurred in Illinois: negotiation, plaintiff delivered its payments to defendant's headquarters, and defendant's supervisors in Downers Grove made key decisions concerning the production process and communicated them to Michigan subordinates. It also noted that five of defendant's headquarters employees were named in the complaint. Plaintiff contended that this case did not involve a selected forum that was devoid of witnesses or evidence but, rather, that the

---

[2]At a hearing, plaintiff's counsel stated that the parties' agreement was memorialized in a series of e-mails. Plaintiff did not attach to its complaint copies of the e-mails.

witnesses resided in several jurisdictions. Plaintiff emphasized that it contemplated calling as adverse witnesses five more of defendant's employees—four worked in Downers Grove and just one worked in Michigan. Three additional witnesses that defendant identified were current employees and under defendant's control. Furthermore, plaintiff argued that Wojcik's declaration should be disregarded because it is not an affidavit sworn under oath as required by Illinois Supreme Court Rule 187 (eff. Jan. 1, 2018). Plaintiff also asserted that defendant had a diminished legal presence in Michigan since 2017, when it no longer registered a principal office or appeared to own property there. At the time of the dispute, defendant maintained only a registered agent's office in Michigan.

¶ 14    Plaintiff attached to its response Alison Bailey Vercruysse's affidavit,[3] wherein she averred that a trial in Michigan was inconvenient for her and that a trial in Du Page County was more convenient because of its proximity to a major airport. Travel to Chicago from California and the West Coast is faster, easier, and cheaper than traveling to Grand Rapids (flights are $100 to $400 more expensive and are indirect). Vercruysse further stated that negotiations with defendant were conducted by defendant's employees working out of Downers Grove and the alleged misrepresentations as to defendant's capacity to meet plaintiff's specifications were made by defendant's Illinois employees. Plaintiff performed its obligations by delivering payments to defendant at its Illinois headquarters. She further averred that several employees who were planned to be called as witnesses at trial resided in California and one resided in Oregon; plaintiff's employees regularly used telephone or e-mail to interact with defendant's Illinois management, who are presumed to have personal knowledge of facts alleged in the complaint; and several of defendant's employees who are identified in plaintiff's complaint work out of defendant's Illinois headquarters. Finally, Vercruysse averred that additional real evidence that may be used at trial, specifically exemplar bars that defendant produced, is in California and would be made available for inspection in California.

¶ 15    At the June 3, 2019, hearing on the motion, plaintiff's counsel noted that there were 12 known witnesses likely to be called at trial: four lived in California, one lived in Oregon, four were in Illinois, and three lived in Michigan. The trial court denied defendant's motion. In announcing its ruling, the court determined that the cause of action arose in Illinois. Specifically, the breach-of-contract count, the court found, arose at least in part in Illinois, and it was "easy" to determine that "it would stay here." Balancing the public- and private-interest factors, the court determined that defendant failed to show that they strongly favored transfer. It commented that it was unclear why plaintiff filed suit in Illinois, but the court reiterated that defendant had failed to show that the relevant factors strongly favored transfer to Michigan. Defendant appeals.

¶ 16                                    II. ANALYSIS

¶ 17    Defendant argues that the trial court abused its discretion in denying its motion to dismiss. It contends that this case is more closely connected with Michigan than Illinois and that defendant should not be forced to litigate in an inconvenient forum. The relevant factors, it asserts, strongly favor litigating this case in Michigan: defendant's employees responsible for production are in Michigan, the jury could visit the facility if appropriate, plaintiff's representatives visited the Michigan facility, test production occurred there, and the production

_____

[3]She does not identify her position at plaintiff's business.

runs occurred in the facility. The breach-of-contract claim identifies four alleged breaches that occurred in Michigan. The promissory-estoppel claim is based on the same allegations of nonconformance to specifications. Defendant contends that the two misrepresentation claims also arose in Michigan because that is where (1) defendant's employees in Illinois and Michigan allegedly made statements concerning the capacity of the Michigan facility and (2) plaintiff visited the facility. Defendant also asserts that, if plaintiff suffered any losses, such as waste of raw materials, those losses occurred in either Michigan or California.

¶ 18    Plaintiff responds that this case is about defendant's failure to deliver on its promise to produce sufficient quantities of marketable bars after receiving substantial advance payments and raw materials. The most significant real evidence and the focus of this case, it asserts, is the exemplar granola bars stored in California, as well as testimonial and documentary evidence of defendant's failed performance. Plaintiff argues that the fact that production occurred in Michigan is incidental and insignificant. Further, it contends that key aspects of the disputed agreements were dictated by defendant's Illinois employees, who (1) mandated ongoing price hikes between production runs, (2) demanded advance payment after rejecting credit terms, and (3) received plaintiff's payments at defendant's Illinois headquarters. For the following reasons, we conclude that the trial court did not abuse its discretion in denying defendant's motion to dismiss.

¶ 19                              A. *Forum Non Conveniens*

¶ 20    The Illinois venue statute provides that an action must be commenced (1) in the county of residence of any defendant who is joined in good faith or (2) in the county in which the cause of action arose. 735 ILCS 5/2-101 (West 2018). If there exists more than one potential forum, the equitable doctrine of *forum non conveniens* may be invoked to determine the most appropriate forum. *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 105 (1990). The *forum non conveniens* doctrine is founded in considerations of fundamental fairness and the sensible and effective administration of justice. *Vinson v. Allstate*, 144 Ill. 2d 306, 310 (1991). It allows a trial court to decline jurisdiction when trial in another forum "would better serve the ends of justice" and the parties' convenience. *Id.*; see *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). The doctrine applies on both an interstate and intrastate basis. *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 13.

¶ 21    The supreme court has noted that, although the doctrine "has a long history at common law, its general application crystallized following *Gulf Oil*" and "Illinois courts employ the analytical framework of *Gulf Oil* in *forum non conveniens* cases." *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 172 (2003).

> "In *Gulf Oil*, the Court discussed private interest factors affecting the litigants and public interest factors affecting court administration. *Gulf Oil*, 330 U.S. at 508, 91 L. Ed. at 1062, 67 S. Ct. at 843. A court must balance the private and public interests in determining the appropriate forum in which the case should be tried. Private interest factors include the convenience of the parties; the relative ease of access to sources of testimonial, documentary, and real evidence; the availability of compulsory process to secure attendance of unwilling witnesses; the cost to obtain attendance of willing witnesses; the possibility of viewing the premises, if appropriate; and all other practical considerations that make a trial easy, expeditious, and inexpensive." *Id.*

¶ 22    The public interest factors include the administrative difficulties caused when litigation is handled in congested venues instead of being handled at its origin, the unfairness of imposing jury duty upon residents of a county with no connection to the litigation, and the interest in having local controversies decided locally. *Id.* at 173.

¶ 23    In deciding a *forum non conveniens* motion, a court must consider all of the relevant factors, without emphasizing any one factor. *Id.* at 175-76 (collecting cases). "Each *forum non conveniens* case must be considered as unique on its facts." *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 443 (2006).

> "The burden is on the defendant to show that relevant private and public interest factors 'strongly favor' the defendant's choice of forum to warrant disturbing plaintiff's choice. *Griffith*, 136 Ill. 2d at 107. The private interest factors are not weighed against the public interest factors; rather, the trial court must evaluate the total circumstances of the case in determining whether the defendant has proven that the balance of factors strongly favors transfer. *Guerine*, 198 Ill. 2d at 518. The defendant must show that the plaintiff's chosen forum is inconvenient to the defendant and that another forum is more convenient to all parties. *Guerine*, 198 Ill. 2d at 518. However, the defendant cannot assert that the plaintiff's chosen forum is inconvenient to the plaintiff. *Guerine*, 198 Ill. 2d at 518. Unless the balance of factors strongly favor a defendant's choice of forum, the plaintiff's choice of forum should rarely be disturbed. *Gulf Oil*, 330 U.S. at 507-08, 91 L. Ed. at 1062, 67 S. Ct. at 842-43." *Id.* at 444.

¶ 24    Deference to the plaintiff's choice of forum is substantial (*Dawdy*, 207 Ill. 2d at 173), "however, the plaintiff's interest in choosing the forum receives 'somewhat less deference when neither the plaintiff's residence nor the site of the accident or injury is located in the chosen forum.' " *Langenhorst*, 219 Ill. 2d at 442-43 (quoting *First American Bank v. Guerine*, 198 Ill. 2d 511, 517 (2002)); see also *Vinson*, 144 Ill. 2d at 311 (the fact that a defendant conducts business within the county is not the only factor the court should consider in its analysis). "This deference to plaintiff's choice of forum is commonly referred to as an unequal balancing test." *Wieser v. Missouri Pacific R.R. Co.*, 98 Ill. 2d 359, 366 (1983).

¶ 25    Finally, the aim of the *forum non conveniens* doctrine is to prevent forum shopping. "Decent judicial administration cannot tolerate forum shopping as a persuasive or even legitimate reason for burdening communities with litigation that arose elsewhere and should, in all justice, be tried there." *Fennell*, 2012 IL 113812, ¶ 19.

¶ 26    A trial court is afforded considerable discretion in ruling on a *forum non conveniens* motion. *Peile v. Skelgas, Inc.*, 163 Ill. 2d 323, 336 (1994). We will reverse the trial court's decision only if defendants have shown that the court abused its discretion in balancing the relevant factors. *Dawdy*, 207 Ill. 2d at 176-77. A trial court abuses its discretion in balancing the relevant factors only where no reasonable person would take the view adopted by the trial court. *Id.* at 177.

¶ 27                                    B. Preliminary Matters
¶ 28                                    1. Wojcik's Declaration
¶ 29    We begin by addressing two preliminary matters. The first is Wojcik's declaration, which plaintiff argued in the trial court must be disregarded because it is not an affidavit sworn under oath as required by Illinois Supreme Court Rule 187 (eff. Jan. 1, 2018) (addressing

*forum non conveniens* motions). Wojcik signed the declaration, but it is neither sworn nor notarized.

¶ 30    Defendant, in turn, argued to the trial court that the declaration complies with section 1-109 of the Code of Civil Procedure (Code), which provides that, "[u]nless otherwise expressly provided by rule of the Supreme Court," whenever a document or pleading "is required or permitted to be verified, or made, sworn to or verified under oath, such requirement or permission is hereby defined to include a certification of such pleading, affidavit or other document under penalty of perjury as provided in this Section." 735 ILCS 5/1-109 (West 2018). The statute further provides that, when any document is so certified,

> "the several matters stated shall be stated positively or upon information and belief only, according to the fact. The person or persons having knowledge of the matters stated in a pleading, affidavit or other document certified in accordance with this Section shall subscribe to a certification in substantially the following form: Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he [or she] verily believes the same to be true.
>
> Any pleading, affidavit, or other document certified in accordance with this Section may be used in the same manner and with the same force and effect as though subscribed and sworn to under oath ***." *Id.*

¶ 31    Wojcik's declaration stated that he had personal knowledge of the matters stated therein and contained the foregoing required statement.

¶ 32    Defendant argued below that Rule 187 does not prohibit the use of a declaration. Rule 187 states, in relevant part, that "[s]uch motions *may* be supported and opposed by *affidavit*. In determining issues of fact raised by affidavits, any competent evidence adduced by the parties shall also be considered." (Emphases added.) Ill. S. Ct. R. 187 (eff. Jan. 1, 2018). During the hearing on defendant's motion to dismiss, the trial court determined that the declaration was not legally deficient.

¶ 33    On appeal, defendant contends that the declaration was properly considered by the trial court because section 1-109 of the Code expressly provides that a document certified in accordance with the provision may be used as though it is subscribed and sworn under oath. 735 ILCS 5/1-109 (West 2018). Here, it notes, the declaration was certified in accordance with section 1-109 and the statute provides that documents certified thereunder are valid "[u]nless otherwise expressly provided by rule of the Supreme Court." *Id.* Because Rule 187(b) does not, defendant argues, expressly provide that *only* an affidavit is permissible in these circumstances, the statute establishes that the declaration made under section 1-109 of the Code is sufficient.

¶ 34    Plaintiff contends that the trial court erred in determining that Wojcik's declaration is competent evidence under Rule 187 and that this presents an alternative basis upon which to affirm the trial court's denial of defendant's motion to dismiss. Plaintiff notes that the declaration lacks a statement of personal knowledge and affirmation of oath under penalty of perjury. Rule 187(b) permits *affidavits* in support of motions to dismiss pursuant to *forum non conveniens*, but it is silent as to declarations. Plaintiff reads the rule as being limited to affidavits or other competent evidence of similar weight to an affidavit stated under oath

before a witnessing notary public. It notes that section 1-109 of the Code expressly permits verifications *unless a rule expressly provides otherwise. Id.* Plaintiff contends that the fact that the declaration is not sworn on oath before a notary who affirms the witnesses' identity, as is typically required of an affidavit, means that it is insufficient because it is not competent evidence under Rule 187(b).

¶ 35   We conclude that the trial court did not err in accepting the declaration. *Medical Alliances, LLC v. Health Care Service Corp.*, 371 Ill. App. 3d 755, 756-57 (2007) (we review *de novo* construction of an Illinois Supreme Court Rule). Rule 187 contemplates that an affidavit may be used to support or oppose a motion to dismiss for *forum non conveniens*, but it does not expressly provide that certifications under section 1-109 may *not* be used in the same manner. Accordingly, we conclude that they are permissible.

¶ 36   Plaintiff also takes the position that the declaration is substantively deficient. It cites *Botello v. Illinois Central R.R. Co.*, 348 Ill. App. 3d 445, 451 (2004), for the proposition that the sufficiency of an affidavit in support of a *forum non conveniens* motion "is measured by the extent to which it allows the trial court to balance the private and public interest factors." Here, it asserts, Wojcik's declaration does not satisfy defendant's burden of producing competent evidence supporting the balancing test. It consists, plaintiff notes, of six statements, summarized as (1) production occurred in Michigan, (2) defendant's main witnesses are in Michigan, and (3) an on-site inspection would "necessarily" be at the Michigan production facility. Plaintiff concludes that the declaration is deficient under Rule 187 because Wojcik does not address the parties' convenience in that Illinois is inconvenient and Michigan is more convenient for all parties.

¶ 37   We disagree that Wojcik's affidavit is substantively deficient. Although he did not expressly use the term "convenience," his assertions directly addressed that issue. He stated where certain witnesses resided, specifically, that primarily defendant's employees in Michigan interacted with plaintiff. He also stated that defendant's employees with direct knowledge of plaintiff's claims are primarily located at its Grand Rapids facility. Finally, Wojcik also stated that, if an on-site inspection is required, it would necessarily occur in Grand Rapids. A reasonable inference from these statements is that Michigan is a more convenient forum.

¶ 38                    2. Michigan's Viability as an Alternative Forum

¶ 39   Plaintiff argues that there is a substantial question whether defendant continues to maintain a business presence in Michigan. In 2018, defendant removed its registered business address from Michigan's public records. Plaintiff notes that defendant conceded in the trial court that it no longer registers a *business address* in Michigan and currently maintains only a registered *agent*. Plaintiff suggests that it is no longer clear whether Michigan courts would have jurisdiction over defendant to grant relief if this case was transferred to Michigan. This court, it urges, can uphold the trial court's ruling on this alternative basis. Defendant responds that it has a registered agent and is doing business in Michigan, the latter of which was confirmed by Wojcik in his declaration that relevant employees of defendant "are primarily located" at its Grand Rapids facility. We reject plaintiff's argument. It cites no relevant authority for its suggestion that Michigan courts would not have jurisdiction over a defendant who has a registered agent but not a registered business address in Michigan.

¶ 40                          C. Deference to Plaintiff's Choice of Forum

¶ 41       Defendant argues that this case is more closely connected to Grand Rapids, Michigan, than to Du Page County. Defendant argues that plaintiff's choice of forum is entitled to little deference because plaintiff is not an Illinois resident (it is a California resident), its claims did not arise in this state, and any injury it suffered did not occur in Illinois. Defendant maintains that plaintiff's breach-of-contract claim is not framed as a dispute about the contract's terms and does not even specify written agreement. Instead the alleged breaches, defendant argues, focus on product quality or process efficiency: (1) defendant delivered fewer bars than promised, (2) delivered nonconforming bars, (3) delivered sealed cases of commingled product, and (4) wasted plaintiff's raw materials. The products were manufactured in Michigan and delivered to plaintiff (presumably in California).

¶ 42       According to defendant, plaintiff admits in the complaint that the suit arises out of defendant's *operation* as a toll manufacturer in Michigan. Defendant also argues that it is not possible to separate the products from their production in Michigan. To the extent that there are issues concerning, among other things, training, supervision, and willfulness, they all focus on the production runs in Michigan.

¶ 43       Defendant argues that the misrepresentation claims also arose in Michigan, where plaintiff alleged that defendant made statements about its manufacturing ability. Defendant points to plaintiff's allegations that defendant's Michigan employees made misrepresentations and that plaintiff relied on those misrepresentations. According to defendant, plaintiff would presumably bring this exact suit in Michigan, even if it had never spoken with any of defendant's Illinois employees (the only Illinois-based conduct to which it points in its complaint). Further, it notes that the misrepresentation claims must be evaluated in light of the fact that plaintiff visited the Michigan facility, presumably to see for itself whether defendant had the desired manufacturing capabilities. Under these allegations, defendant argues, the misrepresentation claims arose in Michigan.

¶ 44       Defendant contends that plaintiff did not suffer any alleged injuries in Illinois. If raw materials were lost or wasted, that alleged injury would have occurred in Michigan. If plaintiff suffered any monetary damages, that would have occurred either in Michigan or California.

¶ 45       Plaintiff responds that its choice of forum should be given some weight, where plaintiff's residence is not in the chosen forum, because important acts at issue in each count occurred in Illinois. Plaintiff disputes defendant's assertion that this case primarily concerns defendant's Michigan production facility. According to plaintiff, this case is about defendant's failure to deliver on its promise to produce sufficient marketable bars after receiving substantial advance payments and raw materials. It views this case as being about the products, and the most significant real evidence, in plaintiff's view, is not the factory but the exemplar granola bars stored in California and the testimonial and documentary evidence of defendant's failed performance. The fact that production occurred in Michigan is incidental, plaintiff argues, because key aspects of the disputed agreements were dictated by defendant's Illinois employees. Illinois employees mandated price hikes between production runs. Plaintiff tendered its performance in Illinois by delivering its payments to Downers Grove, which, plaintiff argues, entitles its choice of forum to greater deference.

¶ 46       We conclude that this factor weighs somewhat in plaintiff's favor. Plaintiff's chosen forum is presumed to be appropriate. Although plaintiff is based in California, the trial court reasonably placed some weight on plaintiff's choice to file suit in Illinois, the location of

defendant's headquarters. We agree with plaintiff that the claims alleged in its complaint primarily concern the alleged failure to deliver products in conformance with plaintiff's specifications. Any deviation from those specifications will be assessed by examining the allegedly defective bars, which are in California. Moreover, Illinois employees allegedly changed the contract terms during the production runs. The fact that production occurred in Michigan is not insignificant, but it does not strongly favor that forum over Illinois.

¶ 47                     D. Private-Interest Factors

¶ 48                     1. Convenience of the Parties

¶ 49    Defendant argues that litigating this case in Illinois would be inconvenient because its president of manufacturing, its director of quality assurance, and a national-accounts executive are in Michigan. Further, if either party concludes that other employees working at the plant may be witnesses (given the allegations concerning quality, packing, and loss of raw materials), those employees are in Michigan. Defendant concludes that the important testimonial and documentary evidence in Michigan would make it inconvenient to hold trial in Illinois. In defendant's view, the only fact supporting plaintiff's choice of forum is that it would be more costly in airfare and travel time for it to travel from California to Michigan than it would be to travel from California to Illinois. Defendant argues that the modest cost difference is modest and strongly outweighed by the key witnesses' presence in Michigan.

¶ 50    Plaintiff responds that it is appropriate to consider that defendant's headquarters are in Illinois and notes that the predominate number of witnesses are in Illinois. Thus, the parties have identified 12 witness from four states with personal knowledge of the facts: 4 California witnesses who worked for plaintiff at various times, 1 Oregon witness who is the most senior of plaintiff's employees, 4 Illinois witnesses who work for defendant, and only 3 Michigan witnesses who work for defendant. Thus, defendant would send four employees to attend a Michigan trial and send only three for an Illinois trial. Further, plaintiff asserts that it is possible that it will call Illinois customers to testify about bars they received.

¶ 51    Plaintiff contends that, although five witnesses are in California and Oregon, traveling to Illinois is less expensive and time consuming than traveling to Michigan. Plaintiff also argues that we should reject defendant's argument that three Michigan employees are the witnesses who primarily interacted with plaintiff. It notes that the complaint identified four Illinois vice presidents with whom plaintiff had direct interaction and that plaintiff identified the manager of business development, who, upon plaintiff's information and belief, also worked from the Illinois headquarters (and whom defendant identified as working out of its Michigan facility).

¶ 52    We agree with plaintiff that Illinois is the most convenient forum for the witnesses. It is undisputed that potential key witnesses reside in several states (with only 3 of 12 potential witnesses residing in Michigan) and that travel to Chicago is less expensive and time consuming than travel to Grand Rapids, Michigan.

¶ 53                     2. Ease of Access to Evidence

¶ 54    As to the relative ease of access to sources of testimonial, documentary, and real evidence, plaintiff argues that, here, most evidence at trial will be documentary and testimonial and that the remaining exemplar bars will be real evidence and are currently in California. It notes that witness travel to Michigan is more expensive than travel to Du Page County.

¶ 55 We conclude that this factor weighs in Illinois's favor. As discussed, witness travel costs will clearly be lower for travel to Du Page County than to Michigan. *Infra* ¶ 62.

### 3. Availability of Compulsory Process

¶ 57 The parties agree that Illinois does not have compulsory process for securing the attendance of unwilling witnesses. Defendant argues that this weighs in favor of transfer to Michigan. For example, if a *former* employee of defendant from the Michigan facility is a potential witness, he or she might not be willing to travel to Du Page County for a trial in which he or she has no stake.

¶ 58 Plaintiff responds that Illinois, like California, Oregon, and Michigan, has enacted the Uniform Interstate Depositions and Discovery Act (Act) (735 ILCS 35/1 *et seq.* (West 2018); Cal. Civ. Proc. Code § 2029.100 *et seq.* (West 2018); Mich. Comp. Laws Ann. § 600.1852 (West 2018); Or. R. Civ. P. 38 (eff. Jan. 1, 2014)), which simplifies obtaining depositions of out-of-state witnesses pursuant to subpoena. Further, plaintiff contends that Illinois has the most witnesses (*i.e.*, 4 of defendant's employees), and among the other 8 witnesses, 4 are current employees of the parties. Thus, compulsory process would not be potentially necessary for 8 of the 12 witnesses (and the remaining 4 nonparty witnesses reside in California and can be served pursuant to the Act).

¶ 59 We agree with plaintiff. Illinois has the most witnesses, several are controlled witnesses, and the Act can be used to obtain testimony from other witnesses. This factor favors Illinois over Michigan.

### 4. Costs to Obtain Attendance of Willing Witnesses

¶ 61 Defendant contends that plaintiff's five witnesses in California and Oregon favor neither Illinois nor Michigan as a forum. Defendant also argues that its four vice presidents in Illinois are not closely associated with manufacturing the bars and did not primarily interact with plaintiff. If, defendant posits, plaintiff's allegations that Michigan-based employees made misrepresentations is true, then Illinois witnesses are not even necessary to the case.

¶ 62 Plaintiff responds that direct flights are available to Chicago and not available to Grand Rapids, which shows that there is an obvious time and cost difference between Chicago and Grand Rapids for the disclosed witnesses residing on the West Coast. Flights cost $100 to $400 more and take longer for travel to Grand Rapids. Plaintiff argues that the higher costs likely eclipse the travel costs that Michigan witnesses would incur traveling to Illinois. Further, it would presumably cost less to send *three* Michigan witnesses to Du Page County than to send *four* Illinois witnesses to Grand Rapids. In any event, plaintiff asserts, defendant did not advise the trial court as to its employees' travel costs and Wojcik's declaration does not address convenience.

¶ 63 We conclude that this factor favors Illinois. For long-distance witnesses, travel costs to Illinois are lower than travel costs to Michigan, and flight time is shorter to Illinois. Further, fewer Michigan witnesses would have to travel to Illinois, as compared to the number of Illinois witnesses who would have to travel to Michigan.

¶ 64                                    5. Viewing Premises

¶ 65        As to the possibility of viewing the premises, defendant posits that it would not be possible for an Illinois jury to view the Michigan manufacturing facility. This is important here, defendant contends, because the allegations are site-specific. Plaintiff's case focuses on whether defendant had the capacity at the Michigan facility to manufacture the bars according to whatever promises defendant made. Defendant also points out that plaintiff went to the trouble to visit the Michigan facility when it was evaluating defendant's capabilities, which show the importance of a jury visit. Case law focuses on the *possibility*, not *necessity*, of a site visit, if appropriate, defendant notes. *Fennell*, 2012 IL 113812, ¶ 37. Defendant concludes that given that a key issue is whether the Michigan facility had the capacity to manufacture the bars, a site visit may be appropriate here and weighs strongly in favor of transfer to Michigan.

¶ 66        Plaintiff responds that there should be no need for a jury site visit to the Michigan factory, because this is an action seeking damages for defendant's failure to manufacture bars to specifications. Defendant's failure to deliver bars as promised and meeting the bar-design specifications and quantities are the primary issues. Plaintiff argues that defendant's repeated representations of its stature as an expert in the field are also at issue. This is not, plaintiff urges, a premises-liability case where a site view would be appropriate. Rather, it is an action for broken promises and misrepresentations. Further, the key evidence is the bars and testimony concerning unfilled orders and customer complaints. These will be proven by documentary and testimonial evidence.

¶ 67        Plaintiff takes issue with defendant's assertion that a site visit is important because that is where production occurred and there is an issue whether defendant's facility had sufficient capacity. Plaintiff contends that this misstates the verified complaint, which alleges general incapacity, not specific to the factory, inferred from defendant's failure to perform, which could be due to poor training, poor supervision, willfulness, and so on. Further, plaintiff maintains that it is alleging that defendant either could not, or would not, produce all the bars it promised to produce. Whether or not the factory had the necessary capacity is only part of what it alleged. Viewing the Michigan facility, according to plaintiff, is clearly not appropriate in this contract case. Finally, it argues that there is no evidence that the factory is in the same condition today as it was during the production runs.

¶ 68        We conclude that this factor weighs in Michigan's favor. As defendant notes, the convenience factor concerns the possibility of a view, if appropriate, not the necessity of viewing the premises. *Id.* It would not be feasible for a Du Page County jury to view the Michigan facility. *Id.* ¶ 39 ("irrational" for a St. Clair County jury to travel to Mississippi or Louisiana to view premises, when a viewing could be accomplished more expeditiously if the case were transferred to Mississippi).


¶ 69                                 E. Public-Interest Factors
¶ 70                                    1. Venue Congestion
¶ 71        Addressing congestion, defendant notes that 19,950 new civil cases were filed in the Eighteenth Judicial Circuit in Du Page County in 2017, whereas only 1123 new civil cases were filed in Kent County, Michigan, that year. This is more than 17 times more cases, yet Du Page County has, it notes, only one more judge than the Kent County circuit court does, which works out to about 1330 new cases for each Du Page County judge and about 80 cases

for each Kent County judge. Defendant urges that the relative congestion between the two forums strongly weighs in favor of transfer to Michigan.

¶ 72 Plaintiff responds that the congestion data that defendant presents is misleading. It asserts that there were fewer than 2000 law division cases filed in Du Page County in 2018. Thus, the data is not as conclusive as defendant suggests. Regardless, plaintiff also argues that the trial court was in the better position to assess the burden on its own docket and did not abuse its discretion in (apparently) giving little weight to this factor.

¶ 73 We conclude that this factor slightly favors Michigan, where Kent County is a less congested forum (though to what degree is unclear) than Du Page County.

¶ 74                                    2. Imposition of Jury Duty

¶ 75 Defendant contends that this case has more local ties to Michigan than it does to Illinois, including that the conduct at issue occurred in Michigan (in a facility staffed with Michigan employees). In contrast, the only connection to Du Page County is that a handful of defendant's employees in its Downers Grove headquarters corresponded with plaintiff. Defendant notes that plaintiff visited the Michigan facility, evaluated the results of the test run produced by that facility, and now disputes the quality of the three production runs conducted at the Michigan facility. It never visited defendant's Downers Grove headquarters. Defendant maintains that these facts show that it would be fairer to impose jury duty on Michigan citizens than on Illinois citizens, given that the connection between the litigation and the community is stronger in Michigan.

¶ 76 Plaintiff responds that the unfairness of imposing jury duty upon residents of a community with no connection to the litigation is not a consideration here because Du Page County has a connection to the litigation. Significant events occurred in Du Page County, such as the receipt of payment (which defendant conceded).

¶ 77 We conclude that this is a neutral factor here. Both forums have some connection to this case.

¶ 78                                    3. Locality of Decision

¶ 79 As to the locality-of-decision factor, defendant reiterates that this case has more local ties to Michigan than it does to Illinois, including the conduct at issue, the location of several witnesses, and the site of plaintiff's visit. In contrast, the only connection to Du Page County is that a handful of defendant's employees in its Downers Grove headquarters corresponded with plaintiff.

¶ 80 In response, plaintiff argues that Du Page County has an interest in this litigation because parts of the parties' agreement were negotiated there, in part, and defendant's performance thereunder was managed from Du Page County.

¶ 81 We conclude that this factor is neutral. Both forums have a connection to the litigation.

¶ 82                                    F. Forum Shopping

¶ 83 The parties do not address the forum-shopping factor, and we discern no concerns as to this element. Thus, it does not factor into our analysis.

## G. Balancing of All the Factors

We conclude that the trial court did not abuse its discretion in determining, after it balanced all the relevant factors, that dismissal was not warranted. *Id.* ¶ 17 ("court must evaluate the total circumstances of the case in determining whether the balance of factors strongly favors dismissal"). It was not unreasonable for the trial court to determine that the factors did not *strongly* favor dismissal or transfer to Michigan. Although plaintiff is based in California, its choice of Illinois as the forum for this case is entitled to some weight. Additional factors weighing in Illinois's favor are its convenience for witnesses, ease of access to evidence, availability of out-of-state depositions, and the costs of obtaining willing witnesses. We acknowledge several factors that weigh in Michigan's favor, specifically, the viewing of the premises and a less congested court docket. However, the remaining factors do not weigh in favor of either state. Overall, we conclude that it was reasonable for the trial court to determine that the factors did not strongly favor dismissal and removal to Michigan.

## III. CONCLUSION

For the reasons stated, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.