NOTICE
Decision filed 02/25/22. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2022 IL App (5th) 210261-U

NO. 5-21-0261

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| WILLIE EARL WILLIS and LACREESHA WILLIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellees, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 19-L-286 |
| | ) | |
| THE ESTATE OF RANDALL J. KOELLER and INSURANCE PLANNING AND MANAGEMENT, INC., | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Christopher T. Kolker, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Welch and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not abuse its discretion in denying the defendants' intrastate *forum non conveniens* motions where the defendants did not establish that the private and public interest factors strongly weighed in favor of transferring the cause of action from St. Clair County to Washington County.

¶ 2    The plaintiffs, Willie Willis and Lacreesha Willis, filed an action in the circuit court of St. Clair County, against the defendants, the Estate of Randall J. Koeller and Insurance Planning and Management, Inc., and alleged that Willie Willis sustained severe injuries as a result of Randall J. Koeller's negligent operation of a motor vehicle. The defendants moved to transfer the case to Washington County under the doctrine of intrastate *forum non conveniens*. The trial court found that the defendants failed to meet their burden to show that the relevant private and public interest factors strongly favored a transfer to Washington County and denied the motions to transfer. The

1

defendants petitioned for leave to appeal the ruling pursuant to Illinois Supreme Court Rule 306(a)(2), (a)(4) (eff. Oct. 1, 2020). This court granted leave to appeal, and for the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On January 14, 2019, at approximately 3:58 p.m., Willie Willis and Randall Koeller were involved in a motor vehicle accident in Washington County, Illinois. Just before the accident, Willis was driving a 2002 Mack truck, traveling south on County Road 13 (CR-13), approaching its intersection with County Road 6 (CR-6). Koeller was driving a 2011 Chevrolet Avalanche, traveling west on CR-6, approaching CR-13. The vehicles collided in the intersection of CR-6 and CR-13. At the time of the collision, there were stop signs posted at the intersection for motorists traveling on CR-6. The only independent eyewitness, Kristina Brammeier, reported that the Avalanche proceeded into the intersection, without stopping at the stop sign, and collided with the Mack truck.

¶ 5      First responders from Washington County Ambulance Service were dispatched to the scene. John Felchlia, the director of the Washington County Ambulance Service, arrived on the scene about three minutes ahead of his ambulance crew. Felchlia initially assessed Koeller's condition and determined that Koeller had sustained fatal injuries. The ambulance crew arrived on the scene while Felchlia was helping others place Willis on a backboard. Kevin Kirgan, a paramedic with the Washington County Ambulance Service, evaluated Willis at the scene and treated him during the trip to Washington County Hospital in Nashville, Illinois. Subsequently, Willis was transferred to St. Louis University Hospital in St. Louis, Missouri, for further medical treatment. Koeller sustained serious head injuries and died at the scene. Mark Styninger, the

2

coroner of Washington County, was called to the scene. Styninger obtained samples of Koeller's blood for toxicology testing.

¶ 6 Trooper Neil Sloan, an officer with Illinois State Police, responded to the collision. After conducting an initial assessment of the scene, Trooper Sloan requested assistance from the Illinois State Police Accident Reconstruction Unit. Sergeant Bradley Brachear, a member of the accident reconstruction unit, arrived at the scene approximately 45 minutes after the crash. Sergeant Brachear mapped and photographed the crash site, collected evidence, and prepared an accident reconstruction report.

¶ 7 On April 16, 2019, plaintiff Willie Willis filed a negligence action in the circuit court of St. Clair County against the Estate of Randall J. Koeller (Estate). The plaintiff alleged that Randall Koeller (decedent) operated his vehicle in a negligent manner in that, among other things, he failed to stop at a posted stop sign and failed to yield to oncoming traffic, and thereby caused the collision. Subsequently, the plaintiff amended his complaint, adding Insurance Planning and Management, Inc. (IPM), as a defendant. The plaintiff alleged that at the time of the collision, the decedent was engaged in the scope of his business as an agent of IPM, and that IPM was vicariously liable for the decedent's negligence. In the second amended complaint, the plaintiff's wife, Lacreesha Willis, was added as a plaintiff. She filed counts against the defendants for loss of consortium.

¶ 8 The Estate and IPM filed individual motions to transfer the case to Washington County under the doctrine of intrastate *forum non conveniens*. The defendants claimed that Washington County was the most convenient forum for the litigation. They pointed out that the accident occurred in Washington County, and that any alleged negligent acts by the decedent were committed in Washington County. The defendants also claimed that the plaintiffs filed their action in a foreign forum that had no connection to the litigation. The defendants noted that the plaintiffs

3

were residents of Randolph County, that the decedent was a resident of Washington County, that the decedent's estate was being administered in Washington County, and that defendant IPM had its principal place of business in Washington County. The defendants further claimed that Washington County was more convenient for the witnesses. They pointed out that Kristina Brammeier, the only known independent eyewitness, resided in Washington County, and that the emergency medical responders and law enforcement officers were located in Washington County, Perry County, and Clinton County. They asserted that of those witnesses who were outside of Washington County, most lived or worked closer to Washington County than St. Clair County. In addition, the defendants argued that the court docket in Washington County was less congested than the docket in St. Clair County, and that the residents of Washington County had a greater interest in deciding the case because the collision occurred in Washington County and involved one of its residents. The defendants submitted several documents in support of their motions, including the Illinois Traffic Crash Report, the Illinois State Police Traffic Crash Reconstruction Report, Illinois County Caseload Statistics from the third quarter of 2020, and an affidavit of Washington County Coroner Mark Styninger.

¶ 9    The plaintiffs filed a response in opposition to the defendants' motions to transfer. The plaintiffs argued that St. Clair County was a convenient forum with a genuine connection to the litigation, and that the defendants failed to show that the relevant private and public interest factors strongly favored transfer of the case to Washington County. They noted that the decedent's wife, Angela Koeller, was a resident of St. Clair County and a potential witness in the case. They also noted Sergeant Brachear, the accident reconstruction officer, had his office in St. Clair County, and that defendant IPM had two offices and carried on significant business in St. Clair County. The plaintiffs asserted that Willie Willis had been treated and continued to receive treatment from

4

health care providers in St. Louis County, Missouri, and St. Clair County, Illinois. They claimed that substantial evidence regarding the accident reconstruction and the plaintiffs' injuries and damages was located closer to St. Clair County than Washington County. The plaintiffs also claimed that the case could be tried expeditiously and less expensively in St. Clair County.

¶ 10 The plaintiffs attached several documents in support of their position, including an affidavit of Kristina Brammeier, a second affidavit from Coroner Styninger, and portions of the discovery depositions of Angela Koeller, Sergeant Brachear, and Dr. Brett A. Taylor. The plaintiffs also attached Willie Willis's medical report from the Washington County Ambulance Service, a portion of the deposition of John Felchlia, the accident reconstruction report from the Illinois State Police, and the Illinois Courts' Statistical Summary from 2019. The defendants then supplemented their motion with the complete deposition transcripts of John Felchlia, Sergeant Brachear, and Dr. Taylor.

¶ 11 As noted above, the defendants submitted an affidavit by Washington County Coroner Mark Styninger, dated January 22, 2021, in support of their motions to transfer. In this affidavit, Styninger stated that he was a resident of Washington County, and that his office was located in Washington County. Styninger averred that his office had issued a postmortem toxicology report on blood samples that he had taken from the decedent's body. Styninger averred that if he was called to testify, it would be "far more convenient, less disruptive to the execution of his duties as coroner, and would assist the orderly administration of the office of coroner," to appear in Washington County.

¶ 12 The plaintiffs submitted a second affidavit of Coroner Styninger, dated June 15, 2021, in support of their opposition to defendants' motions to transfer. In his second affidavit, Styninger stated that "all the information known by me relating to the death of Randall J. Koeller" was set

5

forth in the decedent's death certificate and the postmortem toxicology report. Styninger asserted that he had "no other information, knowledge or opinions other than those set forth in the certificate of death and toxicology report." He then stated, "In my judgment, calling me as a witness in this matter would constitute a waste of my valuable time and resources as Washington County Coroner." The toxicology report and death certificate were attached to the second affidavit. The toxicology report was issued by NMS Labs in Willow Grove, Pennsylvania. NMS Labs analyzed the blood samples from the decedent and reported the results to Coroner Styninger. According to the report, the decedent's blood was negative for ethanol and other intoxicants. Styninger signed the decedent's death certificate. The death certificate indicated that the cause of death was massive blunt force head trauma. It also indicated that no autopsy had been performed on the decedent's body.

¶ 13    Portions of the deposition of John Felchlia, the director of the Washington County Ambulance Service, were offered by each party. In his deposition, Felchlia stated that he was a resident of Clinton County, and that his office was located in Washington County. Felchlia testified that he was responsible for day-to-day operations, budgeting, and scheduling. Felchlia responded to the accident scene on January 14, 2019. He noted that Okawville Fire Chief Jim Russell, Okawville Police Captain Kirk Reichmann, and an off-duty Nashville police officer had also responded. Felchlia testified that he initially assessed the decedent and determined that the decedent had sustained fatal injuries. Next, Felchlia helped place the plaintiff on a backboard to prepare him for transport to the hospital. At that point, two medics from the Washington County Ambulance Service arrived on the scene. Felchlia recalled that Kevin Kirgan, a paramedic, treated Willie Willis at the scene and during the transport to the hospital. The second medic, Kyle Hagene, a part-time emergency medical technician, drove the ambulance.

6

¶ 14    Felchlia testified that Kirgan had prepared the patient care report and had the most knowledge regarding Willis's injuries, condition, and treatment. Felchlia stated that Kirgan resided in the southeastern corner of Washington County. Felchlia indicated that if Kirgan was called to testify in person, there would be a need for scheduling coverage. He testified that from an administrator's point of view, it would be more convenient if Kirgan could testify in Washington County because of "proximity to the employment." He noted that it would keep day-to-day operations "a little more intact because his personnel would be here." The Washington County Ambulance Service's patient care record from the call on January 14, 2019, indicates that Kirgan assessed and treated Willis during the trip to the hospital. Kirgan also prepared the patient care record, documenting his observations of Willis's condition and the treatment provided.

¶ 15    Portions of the deposition of Sergeant Bradley Brachear were provided by each party. Sergeant Brachear testified that he was dispatched to the scene of the crash to provide accident reconstruction. Sergeant Brachear mapped the crash scene and obtained photographs of the final resting position of the vehicles, the roadway markings, and the general area where the crash occurred. He later obtained crash data from the airbag control module in Koeller's vehicle and the engine control module in the Mack truck. Sergeant Brachear was asked whether it might be helpful for a jury to visit to the scene of the collision. He replied that "it's good for people to see the locations of crashes if they are going to make an opinion of stuff." He cautioned however, that "to recreate the scenario," an inspection should be done on a snowy day so that the white color of the decedent's vehicle could blend in with the snow on the ground, possibly obstructing the vision of the Mack truck.

¶ 16    Sergeant Brachear stated that he resided in Clinton County and that his office was located in St. Clair County. He recalled that he had been called to testify in his official capacity as a state

police officer in cases in St. Clair County, Marion County, and Johnson County. Sergeant Brachear testified that if he was working at home, it would take approximately 30 minutes to drive to the Washington County courthouse and approximately 35 to 40 minutes to drive to the St. Clair County courthouse. If he was working in Belleville, then it would be easier to get to St. Clair County.

¶ 17    Dr. Brett Taylor is a board-certified orthopedic surgeon and a solo practitioner with an office in St. Louis County, Missouri. Dr. Taylor treated Willie Willis after the collision. He performed surgeries on Willis's cervical spine and lumbar spine. Dr. Taylor stated that if he had to testify in person, an appearance in St. Clair County would result in a limited inconvenience, but an appearance in Washington County would result in a big disruption to his practice. Dr. Taylor acknowledged that video testimony would be more convenient no matter where the trial took place.

¶ 18    The plaintiffs attached an excerpt from the deposition of Angela Koeller in support of their pleadings. Angela Koeller testified that she lives in New Athens, St. Clair County, Illinois. The plaintiffs also attached portions of the Estate's answers to venue interrogatories. Therein, Angela Koeller provided information regarding the decedent's travels on the day of the collision, and information regarding the decedent's work with his insurance customers in St. Clair County and Washington County.

¶ 19    On July 7, 2021, the trial court held a hearing on the defendants' *forum non conveniens* motions. After considering the arguments of counsel, the pleadings, affidavits, depositions, and other exhibits, the court found that the defendants failed to meet their burden to show that Washington County was a more convenient forum for all parties. The court directed plaintiffs' counsel to submit a proposed order and took the matter under advisement. Subsequently, the trial court entered a written order denying the defendants' motions to transfer the case to Washington

8

County. The order included an extensive analysis of the relevant private and public interest factors, along with the court's findings and conclusions.

¶ 20                                    II. ANALYSIS

¶ 21     On appeal, the defendants contend that the trial court abused its discretion in denying their motions to transfer the case to Washington County. They argue that the trial court failed to properly apply the criteria for a *forum non conveniens* motion. They claim that the court disregarded the number of witnesses who resided or worked in Washington County and who would be inconvenienced by a trial in St. Clair County, and that the court distorted the forum analysis by improperly assessing the weight and credibility of the testimony of various witnesses.

¶ 22                      A. The Doctrine of *Forum Non Conveniens*

¶ 23     The Illinois venue statute provides that every action must be commenced in "the county of residence of any defendant who is joined in good faith" or in "the county in which the transaction or some part thereof occurred out of which the cause of action arose." 735 ILCS 5/2-101 (West 2018). An Illinois corporation is a resident of any county in which it has its registered office or other office or is doing business. 735 ILCS 5/2-102 (West 2018). The Illinois venue statute is designed to ensure the action will be brought in a location that is either convenient to the defendant, by providing for venue in the county of defendant's residence, or convenient to potential witnesses by allowing for venue where the cause of action arose. *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 441 (2006). If more than one potential forum exists, the doctrine of *forum non conveniens* may be invoked to determine the most appropriate forum. *First American Bank v. Guerine*, 198 Ill. 2d 511, 515 (2002).

¶ 24     *Forum non conveniens* is an equitable doctrine founded upon considerations of fundamental fairness and the sensible and effective administration of justice. *Langenhorst*, 219 Ill.

2d at 441. The doctrine allows the circuit court to decline jurisdiction in the exceptional case where it appears that holding a trial in another forum, with proper jurisdiction and venue, would better serve the ends of justice. *Guerine*, 198 Ill. 2d at 515. The circuit court is vested with considerable discretion in determining whether to grant a *forum non conveniens* motion, and that determination will be reversed on appeal only if the defendants show that the court abused its discretion in balancing the relevant public and private interest factors. *Langenhorst*, 219 Ill. 2d at 441-42. A circuit court abuses its discretion when no reasonable person would take the view adopted by the circuit court. *Langenhorst*, 219 Ill. 2d at 442.

¶ 25 In evaluating a *forum non conveniens* motion, the circuit court must consider all of the relevant private and public interest factors, without emphasizing any single factor. *Langenhorst*, 219 Ill. 2d at 443. Private interest factors include the convenience of the parties, the relative ease of access to sources of testimonial, documentary, and real evidence, and all other practical considerations that make the trial of a case easy, expeditious, and inexpensive. *Langenhorst*, 219 Ill. 2d at 443; *Guerine*, 198 Ill. 2d at 516. Public interest factors include the interest in deciding controversies locally, the unfairness of imposing the expense of a trial and the burden of jury duty on residents of a forum having little connection to the litigation, and the administrative difficulties presented by adding litigation to already congested court dockets. *Langenhorst*, 219 Ill. 2d at 443-44; *Guerine*, 198 Ill. 2d at 516-17.

¶ 26 The defendant has the burden to show that the relevant private and public interest factors strongly favor transfer. *Langenhorst*, 219 Ill. 2d at 444. In considering whether the defendant has met this burden, the circuit court must evaluate the total circumstances of the case. *Guerine*, 198 Ill. 2d at 518. The court does not weigh the private interest factors against the public interest factors. *Guerine*, 198 Ill. 2d at 518. Each case must be considered on its own unique facts.

*Langenhorst*, 219 Ill. 2d at 443. Unless the balance of factors strongly favors a defendant's choice of forum, the plaintiff's choice should rarely be disturbed. *Langenhorst*, 219 Ill. 2d at 444. With these principles in mind, we consider whether the trial court abused its discretion in denying the defendants' motions to transfer this case to Washington County under the doctrine of *forum non conveniens*.

¶ 27                                B. Plaintiff's Choice of Forum

¶ 28    Initially, we consider what deference is due the plaintiffs' choice of forum. The plaintiffs are residents of Randolph County and the motor vehicle accident occurred in Washington County. Because the plaintiffs' chosen forum is neither the place of the plaintiffs' residence, nor the site of the accident, their choice of forum is entitled to somewhat less deference. *Langenhorst*, 219 Ill. 2d at 448. Nevertheless, the plaintiffs' chosen forum is entitled to some deference, and the battle over forum begins with the plaintiffs' choice in the lead. *Guerine*, 198 Ill. 2d at 521.

¶ 29                                C. Private Interest Factors

¶ 30    Turning to the private interest factors, the first consideration is the convenience of the parties. The defendants must show that the plaintiffs' chosen forum is inconvenient to them and that another forum is convenient to all parties. *Langenhorst*, 219 Ill. 2d at 444. In doing so, the defendants may not argue that a trial in the plaintiff's chosen forum would be inconvenient to the plaintiff. *Langenhorst*, 219 Ill. 2d at 444.

¶ 31    The defendants contend that the trial court abused its discretion in finding that the convenience factor did not strongly favor transfer to Washington County. They claim that when the trial court considered whether St. Clair County was inconvenient to IPM, the court placed too much weight on the amount of business that IPM conducted in St. Clair County. We disagree. In their pleadings, the defendants claimed that St. Clair County had no connection to the litigation

11

and that it was an inconvenient forum for the parties. In its order, the trial court found that IPM had a practical connection to St. Clair County. The court noted that IPM was a company that operated as an independent insurance agency, that it had two offices in St. Clair County, and that it conducted substantial business in St. Clair County. The court further found that IPM had not shown that it would be inconvenient for its representatives to attend a trial in St. Clair County. The court then considered the Estate's claim that it would be inconvenient to litigate this case in St. Clair County. The court noted that Angela Koeller was the decedent's wife and the executor of his estate, and that she resided in St. Clair County. The court rejected the suggestion that Angela Koeller was only a nominal party representative. In addition to the disputed issues regarding the decedent's negligence, there is also a genuine dispute about whether the decedent was acting in the scope of his agency relationship with IPM at the time of the accident. According to the record, Angela Koeller, the executor of the Estate, has some knowledge regarding the agency issue. The defendants have not offered any affidavits or testimony from the executor of Estate or representatives of IPM, stating that a trial in St. Clair County would be inconvenient for them. Based on this record, the trial court did not abuse its discretion in finding that the convenience factor did not strongly favor transfer to Washington County.

¶ 32    The next consideration is the relative ease of access to sources of testimonial, documentary, and real evidence. The parties have identified several witnesses who are expected to testify in this case. Angela Koeller, a potential liability witness, resides in St. Clair County. Kristina Brammeier, the independent eyewitness, resides in Washington County. Kevin Kirgan, the paramedic who attend to Willie Willis, resides in Washington County.

¶ 33    Illinois State Trooper Neil Sloan works out of Illinois State Police District 13 in Perry County, and his residential address is unknown. Illinois State Police District 13 is approximately

12

33 miles from the Washington County courthouse and 64.5 miles from St. Clair County. Sergeant Brachear performed the accident reconstruction. His office is in Belleville, and his residence is in Clinton County. Brachear testified that if he was working at home, he would have a 30-minute drive to the courthouse in Washington County, and a 35- to 40-minute drive to the courthouse in St. Clair County. If he was working in Belleville, then it would be easier to get to St. Clair County.

¶ 34    Coroner Styninger is a resident of Washington County, and his office is located in Washington County. In his initial affidavit, Styninger stated that if called to testify, it would be "far more convenient" and "less disruptive to the execution of my duties as coroner," to appear in Washington County. However, in his subsequent affidavit, Styninger stated he had no knowledge or opinions about the case other than those set forth in the decedent's death certificate and the toxicology report. Styninger also stated that in his judgment, calling him as a witness "would constitute a waste of my valuable time and resources as Washington County Coroner." Considering both affidavits together, it appears that Coroner Styninger would be inconvenienced by having to testify in either county.

¶ 35    John Felchlia, the director of the Washington County Ambulance Services, stated that there would be a need for scheduling coverage if his paramedic, Kevin Kirgan, was called to testify in person. Felchlia stated that it would be more convenient from an administrative point of view if Kirgan testified in Washington County.

¶ 36    Neither party identified any potential witnesses from the Washington County Hospital where Willis was initially treated. The plaintiffs have identified three treating physicians and a treating psychologist, all of whom have offices in St. Louis County. One of those physicians, Dr. Taylor, stated that he could attend a trial in St. Clair County, with minimal inconvenience, but that travel to Washington County would greatly disrupt his medical practice. In addition, the plaintiffs

13

have identified two current treating physicians whose offices are in St. Clair County, and a long-time family physician whose office is in St. Clair County.

¶ 37 In sum, the witnesses who have been identified are scattered among several counties in southern Illinois and St. Louis County, Missouri, and there is no predominant connection to either forum. The independent eyewitness resides in Washington County, and a liability witness resides in St. Clair County. The aforementioned first responders in this case either reside or work in Washington County, Perry County, Clinton County, or St. Clair County. The plaintiffs' medical care providers are located in St. Louis County, Missouri, and St. Clair County. Washington County and St. Clair County are adjoining counties, and regardless of where the trial is held, some witnesses will likely be required to travel.

¶ 38 The documentary evidence, including the accident reconstruction report, the medical records of Willie Willis, and the death certificate and toxicology report of the decedent, can be electronically distributed and easily produced in either forum. The same is true for any relevant corporate records of IPM.

¶ 39 Upon considering the affidavits, deposition testimony, and other exhibits, the defendants have not demonstrated that access to the testimonial and documentary evidence favors Washington County. Thus, we do not find that the trial court abused its discretion in determining that this factor does not strongly favor transfer to Washington County.

¶ 40 Another private interest factor is the possibility of viewing the scene of the collision, if appropriate. In analyzing this factor, the trial court found that the possibility of viewing the scene would be available to jurors in both counties. The court also found that the trip for jurors in St. Clair County would be 11.5 miles longer than for jurors in Washington County, and that this consideration tipped slightly in favor of the Washington County forum. Next, the court recognized

14

that the accident occurred more than two years ago, and that it would be nearly impossible to replicate pertinent environmental conditions that existed on the date of the accident, such as the presence of snow and the absence of crops in the fields. The record shows that the Illinois State Police mapped the crash site and took photographs to document the scene within a few hours after the crash. Thus, documentary evidence of the crash scene would be available to present to the factfinders should either party choose to do so. The trial court did not abuse its discretion in concluding that this factor does not strongly favor transfer to Washington County.

¶ 41 Next, consideration is given to the remaining private interest factors regarding the availability of the compulsory process, the costs to obtain the attendance of witnesses, and other practical considerations that make the trial of a case easy, expeditious, and inexpensive. In this case, all of the in-state witnesses that have been identified by the parties are subject to subpoena in either county. Additionally, IPM and its officers, directors, and employees may be compelled to appear and produce documents through a notice under Illinois Supreme Court Rule 237(b) (eff. Oct. 1, 2021). Four of the plaintiffs' medical care providers are located in St. Louis County, Missouri, and are outside of the compulsory process of Illinois courts. The plaintiffs' medical care providers are located in St. Louis County, and St. Clair County, but there is no specific evidence in the record regarding their hourly fees for trial testimony. At present, no retained experts have been identified. Based on the information in the record, it is unlikely that an overnight stay would be required for any of the witnesses that have been identified. Plaintiffs' counsel and IPM's counsel are located in Madison County, and the Estate's counsel is located in Marion County. Although the location of counsel is accorded little weight, it is one of the practical considerations regarding the trial of a case. Based upon this record, we do not find that the trial court abused its discretion

15

in concluding that these other practical considerations do not strongly favor transfer to Washington County.

¶ 42                                   D. Public Interest Factors

¶ 43     Turning to the public interest factors, we will consider together the interest in deciding localized controversies locally and the burden of imposing jury duty and the expenses of a trial upon of a county with little connection to the controversy. This case involves a motor vehicle accident that occurred in Washington County. One of the drivers was a resident of Washington County, and his negligence is at issue. Thus, Washington County has a local interest in resolving the case. This case also involves the derivative liability of IPM. IPM is a resident of and has offices in St. Clair County. The decedent was an agent of IPM at the time of the accident. IPM's agents operate motor vehicles on the roads of St. Clair County and Washington County in the course of doing business. Thus, St. Clair County and Washington County have similar interests in ensuring that IPM's agents operate their vehicles safely on its roadways. Under the facts and circumstances, it would not be unfair to impose the burden of jury service and the expense of a trial on the citizens of either county. Thus, the trial court did not abuse its discretion in concluding that though these factors tip in favor of Washington County, they do not strongly favor transfer to Washington County.

¶ 44     Finally, we consider the administrative concerns regarding congested court dockets. In their motions to transfer, the defendants presented very little argument on this factor. The defendants argued as follows, "Congestion favors Washington County over St. Clair County and court administration tells us it is more reasonable to burden the residents of Washington County to participate in jury duty on cases that arise solely in their jurisdiction," and they attached the "Civil and Domestic Relations Caseload Statistics by County" for the third quarter of 2020. In

16

response, the plaintiffs argued, "The statistics from the Annual Report of the Illinois Courts showed that St. Clair County is both more efficient and that the judges in St. Clair County are more experienced in cases involving significant damages," and in support, attached the "Illinois Courts Statistical Summary" from 2019. The defendants offered the statistics for the third quarter of 2020 to show that there were more civil cases pending in St. Clair County than in Washington County at that time. However, the defendants presented no evidence to show that the pending case would be resolved more quickly in Washington County. Our supreme court has stated that court congestion is a relatively insignificant factor, particularly where the record does not reveal that the other forum would actually resolve the case more quickly. See *Langenhorst*, 219 Ill. 2d at 451-52; *Guerine*, 198 Ill. 2d at 517. Here, the trial court indicated that upon the request of the litigants, this case could get to trial quickly. The trial court is in the best position to consider any administrative problems in relation to its own docket and its ability to try the case in an expeditious manner. *Langenhorst*, 219 Ill. 2d at 451. Thus, the trial court did not abuse its discretion in finding that this factor does not favor transfer to Washington County.

¶ 45                        III. CONCLUSION

¶ 46    Before the plaintiff can be deprived of his chosen forum, the balance of factors must strongly favor transfer. *Guerine*, 198 Ill. 2d at 526. This is not such a case. This is a case in which the potential trial witnesses are scattered among several counties, and no single county enjoys a predominant connection to the litigation. The trial court carefully considered all of the relevant public and private interest factors and concluded that the defendants failed to meet their burden to show that the balance of factors strongly favored transfer of this case to Washington County. After reviewing the record, we cannot say that no reasonable person would have taken the view adopted

17

by the trial court. Therefore, we conclude that the trial court did not abuse its discretion in denying the defendants' motions to transfer based on intrastate *forum non conveniens*.

¶ 47    Accordingly, the order of the circuit court of St. Clair County is affirmed.


¶ 48    Affirmed.